**UNITED STATES of America,
Appellee,**

v.

**Richard A. SVOBODA, Defendant,**

**Michael A. Robles, Defendant–Appellant.**

Docket No. 03–1102.

United States Court of Appeals, Second Circuit.

Argued June 17, 2003.

Decided: Oct. 24, 2003.

Alan M. Dershowitz, Esq., Cambridge, Massachusetts (Nathan Z. Dershowitz, Esq., Dershowitz, Eiger & Adelson, P.C., New York, New York, on the brief), for Defendant–Appellant.

Steven R. Peiken, Assistant United States Attorney, Southern District of New York, New York, New York (James B. Comey, United States Attorney, Jason Sabot and Gary Stein, Assistant United States Attorneys, on the brief), for Appellee.

Before: LEVAL, RAGGI, Circuit Judges, and SCULLIN,[1] Chief District Judge.

1. The Honorable Frederick J. Scullin, Jr., Chief United States District Judge for the Northern District of New York, sitting by designation.

SCULLIN, Chief District Judge.

Michael A. Robles appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York, the Honorable Richard M. Berman, J., presiding. On October 3, 2002, after a thirteen-day jury trial, Robles was convicted of one count of conspiracy to commit securities and tender offer fraud (Count 1) pursuant to 18 U.S.C. § 371 and thirteen individual securities and tender offer fraud counts (Counts 2–6, 9–11, 13 and 15–18)[2] pursuant to 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. §§ 240.10b–5 & 240.14e–3(a), and 18 U.S.C. § 2.[3] On appeal, Robles principally contends that (1) the district court erred in giving a conscious avoidance instruction with respect to the conspiracy charge and (2) venue was improper in the Southern District of New York as to all counts. For the reasons set forth below, we affirm.

## I. BACKGROUND

At trial, the Government sought to prove that Robles and his long-time friend Richard Svoboda[4] engaged in a conspiracy to commit securities and tender offer fraud for profit between approximately November 1994 and December 1997. During that period, Svoboda was employed in Dallas, Texas, as a "credit policy officer" at Nations Bank, a financial institution engaged,

inter alia, in commercial lending. As a credit policy officer, Svoboda was charged with structuring and approving loans to corporate clients. In the course of his duties at Nations Bank, Svoboda was privy to confidential information about Nations Bank's clients, such as earnings information and merger and acquisition plans. Svoboda testified that he obtained confidential information about certain securities and tender offers through his position at Nations Bank; that he passed the information to Robles, who, in turn, used the insider information to make trades; and that he and Robles shared the profits realized from their illicit trading. Svoboda further testified that he and Robles discussed and agreed upon the details of the above-described scheme and that Robles was fully aware that he was trading on the basis of unlawfully obtained insider information. Robles, however, took the stand in his own defense and denied knowledge of the unlawful source of Svoboda's information.

At the close of evidence, the Government requested a conscious avoidance instruction; i.e., an instruction to the effect that the Government could satisfy its obligation to prove Robles' knowledge of the unlawful source of the information by proving that he deliberately avoided acquiring that knowledge. Over Robles' objection, the district court granted the

---

**2.** The jury failed to reach a verdict with respect to the remaining eight counts of securities and tender offer fraud charged in the indictment.

**3.** In short, Section 10(b) of the Securities Exchange Act of 1934 (the "'34 Act"), 15 U.S.C. § 78j(b), prohibits the use of "any manipulative or deceptive device or contrivance" in the purchase or sale of securities; 17 C.F.R. § 240.10b–5, in turn, includes trading on the basis of insider information, i.e., "material nonpublic information," within the definition of "manipulative or deceptive device or contrivance;" Section 14(e) of the '34 Act, 15

U.S.C. § 78n(e), and 17 C.F.R. § 240.14e–3(a) set forth similar provisions concerning the use of "fraudulent, deceptive, or manipulative acts or practices" in connection with tender offers; 15 U.S.C. § 78ff prohibits "willful" violations of the above provisions; and, finally, 18 U.S.C. § 2 renders an accomplice to a federal offense punishable as a principal.

**4.** Svoboda was originally indicted along with Robles but later entered into a plea agreement with the Government in which he agreed, inter alia, to testify against Robles at trial.

Government's request and included a conscious avoidance instruction in the jury charge.[5]

## II. DISCUSSION

### A. The Conscious Avoidance Instruction

The instant case requires us to determine whether and under what circumstances the doctrine of conscious avoidance may be employed in a conspiracy prosecution. Robles' principal contention on appeal is that the conscious avoidance doctrine cannot be employed in the course of establishing a conspiratorial agreement between two persons. We disagree.

#### 1. *Proof of a conspiratorial agreement*

■ Robles was convicted of conspiracy to engage in insider trading under 18 U.S.C. § 371, the general federal conspiracy statute, which provides that

> [i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United

States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. A conspiracy conviction under § 371 requires proof of three essential elements: (1) an agreement among two or more persons, the object of which is an offense against the United States; (2) the defendant's knowing and willful joinder in that conspiracy; and (3) commission of an overt act in furtherance of the conspiracy by at least one of the alleged co-conspirators. *See, e.g., United States v. Pinckney,* 85 F.3d 4, 8 (2d Cir.1996) (citing *United States v. Montour,* 944 F.2d 1019, 1024 (2d Cir.1991)); *see also* 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.2 (2d ed.2003); 1 L. Sand *et al., Modern Federal Jury Instructions* 19–3 ("that the defendant knowingly and willfully became a member of the conspiracy").[6]

■ "The gist of conspiracy is, of course, agreement." *United States v. Beech–Nut Nutrition Corp.,* 871 F.2d 1181,

---

**5.** While objecting to the giving of a conscious avoidance charge, Robles requested that the district court utilize Judge Sand's model instruction rather than the Government's proposed instruction. The district court granted Robles' request and instructed the jury as follows:

> In determining whether the defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him. If you find, beyond a reasonable doubt, that the defendant acted with a conscious purpose to avoid learning the truth, that he was trading on the basis of insider information, then this element may be satisfied.
>
> However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish or mistaken. If you find that the defendant was aware of a high probability that he was

trading on the basis of insider information, and that the defendant acted with a deliberate disregard of the facts, you may find that the defendant acted knowingly. However, if you find that the defendant actually believed that he was not receiving insider information, he may not be convicted.

A. 106.

**6.** We note that this formulation of the elements of conspiracy under § 371 is somewhat redundant when applied to a scheme involving only two persons: "It is axiomatic that the existence of an agreement necessarily implies knowledge of the object of the agreement and the voluntary expression of assent to participate in its objectives." *United States v. Toler,* 144 F.3d 1423, 1425–26 (11th Cir. 1998). Put another way, to find that an agreement existed amongst the alleged conspirators, the finder of fact must necessarily find some knowledge of the aims of the agreement and the intent to bring them about.

1191 (2d Cir.1989); *see Iannelli v. United States*, 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) ("Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act.") (citations omitted). " 'A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.' " *United States v. Samaria*, 239 F.3d 228, 234 (2d Cir.2001) (quotation omitted). In either case, "the evidence must be sufficient to permit the jury to infer that the defendant and other alleged coconspirators entered into a joint enterprise with consciousness of its general nature and extent." *Beech–Nut Nutrition Corp.*, 871 F.2d at 1191 (citing *United States v. Alessi*, 638 F.2d 466, 473 (2d Cir.1980)).

■ Conspiracies are secretive by their very nature, and it is thus well-settled that the elements of a conspiracy may be proved by circumstantial evidence. *See Samaria*, 239 F.3d at 234 (citation omitted); *see also United States v. Desena*, 260 F.3d 150, 154 (2d Cir.2001) ("The elements of a conspiracy may be proved by circumstantial evidence.") (citation omitted).

In certain conspiracy prosecutions, the Government often seeks to prove that a particular defendant joined a preexisting conspiracy. *See, e.g., United States v. Reyes*, 302 F.3d 48, 53 (2d Cir.2002); *United States v. Ciambrone*, 787 F.2d 799, 806 (2d Cir.1986). In other cases, the question is whether a conspiracy existed at all and, if so, whether a particular defendant was a party to the alleged conspiratorial agreement. *See, e.g., Beech–Nut Nutrition Corp.*, 871 F.2d at 1191–93 (discussing evidence of single versus multiple conspiracies); *United States v. Gaviria*, 740 F.2d 174, 183 (2d Cir.1984). Of course, the nature of the evidence used to establish the existence of a conspiratorial agreement may vary slightly, depending on the circumstances of the case. In the case of a preexisting conspiracy, the critical evidentiary question is often whether the defendant joined in the charged conspiracy (1) with some knowledge of the conspiracy's unlawful aims and (2) with the intent of helping the scheme succeed. *See Reyes*, 302 F.3d at 53 (citations omitted). In other cases, the evidentiary question is frequently whether there is proof that the defendant (1) had knowledge of the unlawful aims of the charged scheme and (2) evinced, by his actions, an intention to further or promote its unlawful aims. *See Beech–Nut Nutrition Corp.*, 871 F.2d at 1191 (a conspiratorial agreement may be inferred where there is " 'some indication that the defendant knew of and intended to further the illegal venture' ") (quoting *United States v. Zambrano*, 776 F.2d 1091, 1095 (2d Cir.1985)). The difference is not one of legal substance but only of evidentiary emphasis depending on the circumstances of the case. In either case, the fundamental legal question is the same: whether the evidence establishes beyond a reasonable doubt that a particular defendant entered into an agreement with others with knowledge of the criminal purpose of the scheme and with the specific intent to aid in the accomplishment of those unlawful ends.

### 2. *The conscious avoidance doctrine*

■ "The conscious avoidance doctrine provides that a defendant's knowledge of a fact required to prove the defendant's guilt may be found when the jury 'is persuaded that the defendant consciously avoided learning that fact while aware of a high probability of its existence.' " *Samaria*, 239 F.3d at 239 (quoting *United States v. Finkelstein*, 229 F.3d 90, 95 (2d Cir.2000)). "In such circumstances, a conscious avoidance instruction to the jury 'permits a

finding of knowledge even where there is no evidence that the defendant possessed actual knowledge.'" *Id.* (quoting *United States v. Ferrarini,* 219 F.3d 145, 154 (2d Cir.2000)).

### 3. The application of the conscious avoidance doctrine in the conspiracy context

Relying on dictum in one of our opinions, *United States v. Reyes,* 302 F.3d 48, 54 (2d Cir.2002), Robles contends that "the doctrine of conscious avoidance cannot be used at all in the context of a two-person conspiracy." Appellant's Brief at 21. We disagree. The *Reyes* decision does not mean what Robles reads into it. Even if it did, it would not support his argument.

In *Reyes,* we upheld the defendant's conviction by the jury, overturning the district court's grant of a directed verdict. The defendant was in the business of selling auto parts. The jury found him guilty of engaging in the transportation and sale of stolen airbags and conspiracy to do the same. There was evidence that the defendant, when being interviewed by an FBI agent, said he was aware that the bags were stolen, making "an analogy to ... when you see a friend using drugs, you see what's happening, but you turn the other way." *Reyes,* 302 F.3d at 52. In analyzing the sufficiency of the evidence to support the conviction, we found that the evidence was sufficient to prove that the defendant knew the airbags were stolen, or in any event "thought the airbags were stolen, but deliberately avoided confirming that fact." *Reyes,* 302 F.3d at 56. We further found that evidence supported the defendant's intentional participation in the conspiracy.

Prior to analyzing the evidence, our opinion discoursed on the nature of the conscious avoidance doctrine and observed, "[We] do not permit the doctrine to be used to prove intent to participate in a conspiracy." *Id.* at 54. This observation played no role in the decision.

Robles relies on this sentence for his argument. His argument is essentially that conspiracy by definition requires the participation of two or more conspirators, both of whom must intend to participate. If intent to participate may not be proved by reliance on conscious avoidance, then in a case of only two conspirators where the prosecution must rely on the doctrine of conscious avoidance to prove intent to participate on the part of one, the necessary proof of intent to participate by at least two conspirators will be lacking.

This argument fails for three reasons. First, the statement in *Reyes* on which Robles relies was pure dictum. As noted, it played no role whatever in the decision, which was to *uphold* the defendant's conviction upon the jury's guilty verdict.[7] *Reyes* stands for the proposition that the conscious avoidance doctrine may be invoked to satisfy the requirement that a

---

7. The statement in *Reyes* was substantially quoted from dicta in several prior opinions, each upholding a conspiracy conviction. *See United States v. Tropeano,* 252 F.3d 653, 660 (2d Cir.2001) (upholding conviction on a conscious avoidance charge); *United States v. Ferrarini,* 219 F.3d 145, 156 (2d Cir.2000) (upholding a conviction where instructions permitted the jury to infer only "knowledge of the *unlawful* objectives of the conspiracy" from conscious avoidance); *United States v. Eltayib,* 88 F.3d 157, 170 (2d Cir.1996) (same); *United States v. Lanza,* 790 F.2d 1015, 1023 (2d Cir.1986) (finding "a conscious avoidance charge ... appropriate vis-a-vis knowledge of the objectives of the scheme"). Since each opinion upheld the conviction on a finding that the charge given on conscious avoidance was appropriate, the further observation that the conscious avoidance charge is not given in certain circumstances played no role in explaining the decision. In each case, it was dictum.

defendant know of the unlawful aims of the conspiracy. *See Reyes*, 302 F.3d at 55 ("the jury may use the conscious avoidance doctrine to establish the defendant's knowledge of the aims of the conspiracy").

Second, the district court's instruction did not conflict with the *Reyes* dictum. The court instructed the jury, as quoted above, only to the effect that, "[i]n determining whether the defendant acted *knowingly*, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him." A. 106 (emphasis added). In giving the instruction, the court made no reference to the defendant's "intent to participate."

Finally, we doubt that the dictum in *Reyes* intended what the defendant reads into it. The broad assertion that conscious avoidance may not be used to prove "intent to participate" has a capacity to cause confusion, and Robles' argument draws on that confusion. Properly understood, "intent to participate" is a shorthand phrase used to encompass both aspects of the joinder element of conspiracy, i.e., a defendant's knowledge or awareness of the illegal nature of the charged activity and his intent to advance the illegal objective.[8]

Thus, when *Reyes* states that conscious avoidance cannot prove intent to participate, we do not understand it to mean that conscious avoidance cannot be used to prove any aspect of intent to participate; it simply means that just as actual knowledge of the illegal purpose of a conspiracy is insufficient to prove a defendant's joinder in a conspiracy, so conscious avoidance of such knowledge is also insufficient. There must be further proof that the defendant joined in the illegal agreement with the intent of helping it succeed in its criminal purpose.

In sum, we can see no reason why the factfinder may not rely on conscious avoidance to satisfy at least the knowledge component of intent to participate in a conspiracy. Moreover, we firmly reject Robles' contention that a conscious avoidance charge may not be used in a two-person conspiracy. Whether the conspiracy is among two members or more, a defendant's conscious avoidance of knowledge of its illegal purpose may substitute for knowledge of the illegal purpose.[9]

In making this argument, Robles contends that a two-person conspiracy requires proof that each alleged co-conspirator possessed actual knowledge of the un-

---

**8.** It is to ensure that jurors do not mistakenly conflate the knowledge and intent aspects of the *mens rea* necessary to prove a defendant's joinder in a conspiracy that trial judges routinely charge:

> Mere knowledge [of a criminal conspiracy] ... without participation, in the unlawful plan is not sufficient. Moreover, the fact that ... a defendant, without knowledge, merely happen[s to act] to further the purposes or objectives of the conspiracy, does not make the defendant a member .... What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

1 L. Sand *et al., Modern Federal Jury Instructions* 18–6.

**9.** Significantly, Robles *does not* challenge the sufficiency of the evidence supporting his conspiracy conviction. Accordingly, we assume, for purposes of this appeal, that the evidence was, in fact, sufficient to establish beyond a reasonable doubt (1) Robles' knowledge that he was trading on inside information and (2) his active participation in the charged scheme. We have no difficulty concluding that this evidence provides a proper evidentiary foundation, as a matter of law, to infer the existence of an agreement to violate federal securities laws.

lawful objectives of the charged scheme—otherwise, he argues, there can be no illicit agreement. This argument presupposes that a finding of conscious avoidance stands on a lesser legal footing than a finding of actual knowledge. Our precedents, however, establish that knowledge consciously avoided is the legal equivalent of knowledge actually possessed. *See, e.g., United States v. Finkelstein,* 229 F.3d 90, 95 (2d Cir.2000) ("one who deliberately avoided knowing the wrongful nature of his conduct is as culpable as one who knew"). The defendant's conscious avoidance of knowledge of the unlawful aims of the conspiracy thus may be invoked as the equivalent of knowledge of those unlawful aims. In the context of a two-person conspiracy, intent to participate may be shown by a finding that the defendant either knew, or consciously avoided knowing, the unlawful aims of the charged scheme and intended to advance those unlawful ends.

### 4. *Factual predicate for the conscious avoidance instruction*

■ Having found no doctrinal obstacle to employing a conscious avoidance instruction in the context of a two-person conspiracy, we now turn to the question of whether the facts in the instant case support such an instruction.

■ We note at the outset that Robles raised his challenge to the factual predicate for the conscious avoidance instruction in a footnote. *See* Appellant's Brief at 31 n. 15. It is well-established in this Circuit that " '[w]e do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.' " *United States v. Quinones,* 317 F.3d 86, 90 (2d Cir.2003) (quoting *United States v. Restrepo,* 986 F.2d 1462, 1463 (2d Cir.1993)) (other citations omitted). In any event, for the reasons that

follow, we find Robles' argument on this point unpersuasive.

■ A conscious avoidance instruction "may only be given if (1) the defendant asserts the lack of some specific aspect of knowledge required for conviction, ... and (2) the appropriate factual predicate for the charge exists, i.e., 'the evidence is such that a rational juror may reach [the] conclusion beyond a reasonable doubt ... that [the defendant] was aware of a high probability [of the fact in dispute] and consciously avoided confirming that fact[.]' " *Ferrarini,* 219 F.3d at 154 (internal citations omitted). The second prong of this test thus has two components—there must be evidence that the defendant (1) was aware of a high probability of the disputed fact and (2) deliberately avoided confirming that fact. *See Lara–Velasquez,* 919 F.2d 946, 951–52 (5th Cir.1990) (quoting *United States v. Alvarado,* 838 F.2d 311, 314 (9th Cir.1988)) (footnote omitted). Of course, "the same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct ordinarily will also raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct." *Id.* at 952. Moreover, the second prong may be established where, "[a] defendant's involvement in the criminal offense may have been *so overwhelmingly suspicious* that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge." *Id.* (citations omitted) (emphasis in original).

Here, the first prerequisite is easily met, as Robles denied knowledge of the unlawful source of Svoboda's investment advice. The second prerequisite is also easily met. First, the source of Svoboda's information was suspicious—Robles knew that Svoboda was a credit officer at Nations Bank and would thus be privy to confidential finan-

cial information. Second, the timing of Robles' trades was suspicious—for example, some of Robles' trades occurred as little as a day before a tender offer announcement. Third, the success of the trades was suspicious—Robles realized large returns, up to 400%, on trades based on Svoboda's advice. These facts suggest a high probability that Svoboda's tips were based on inside information and that any lack of actual knowledge on Robles' part was due to a conscious effort to avoid confirming an otherwise obvious fact. We therefore find that there was a sufficient factual predicate in the instant case to warrant a conscious avoidance instruction.[10]

### 5. *Substance of the conscious avoidance instruction*

██ Finally, Robles argues that, even if the conscious avoidance instruction was theoretically proper, its content impermissibly diluted the *mens rea* requirement for the conspiracy charge, i.e., specific intent to engage in the proscribed conduct, and thus allowed the jury to convict on a negligence theory. We need not reach the merits of this contention, however, as Robles' trial counsel specifically requested the charge that was given. *See Tuttle v. Equifax Check,* 190 F.3d 9, 15–16 (2d Cir. 1999) (citing *Lavoie v. Pacific Press & Shear Co.,* 975 F.2d 48, 55 (2d Cir.1992) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection."); *United States v. Young,* 745 F.2d 733, 752 (2d Cir.1984) ("[N]ot even the plain error doctrine permits reversal on the ground that the trial court granted a defendant's request to charge.")) (other citations omitted); *see also* Fed.R.Crim.P. 30 ("A party who objects to any portion of the instructions ... must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate.... Failure to object in accordance with this rule precludes appellate review ....").

██ Even if we were to consider the merits of Robles' challenge to the content of the conscious avoidance instruction, his argument is unavailing. To begin, the conscious avoidance instruction itself made clear that "guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish or

---

10. The parties, as well as the district court, considered the case to be a "credibility case" from the outset. In essence, if the jury believed Svoboda's testimony that he and Robles jointly developed and executed the charged scheme, conviction would surely follow. Likewise, if the jury disbelieved Svoboda and credited Robles' testimony, acquittal, at least on the conspiracy charge, would presumably follow.

Robles thus argues that allowing the jury to use a conscious avoidance theory to establish his knowledge of the unlawful aims of the charged scheme unfairly withdrew the credibility issue from the jury. Specifically, Robles argues that the jury was permitted to convict even if it disbelieved Svoboda's testimony entirely but nevertheless concluded that Robles consciously avoided confirming the unlawful source of Svoboda's tips.

This argument is foreclosed by our conclusion that an appropriate factual predicate for the conscious avoidance instruction existed in this case. *Cf. United States v. Chen,* 913 F.2d 183, 192 (5th Cir.1990) (noting that "the court is required to 'instruct the jury on all aspects of a case in order for them to reach a fair and proper verdict'") (quotation omitted). In any event, we note that it was Robles' own testimony that raised the issue of conscious avoidance. *Cf. United States v. Aina–Marshall,* 336 F.3d 167, 171 (2d Cir. 2003) ("When a defendant charged with knowingly possessing contraband items takes the stand and admits possession of the contraband but denies having known of the nature of the items, a conscious avoidance charge is appropriate in all but the highly unusual—perhaps non-existent—case."); *Chen,* 913 F.2d at 192 (same).

mistaken." *See* A. 106; *United States v. Lalley*, 257 F.3d 751, 756 (8th Cir.2001) (rejecting the argument that a conscious avoidance charge allowed the jury to convict on a negligence theory where charge clearly cautioned that a finding of "negligence, mistake, or carelessness" was insufficient) (citing *United States v. Uphoff*, 232 F.3d 624, 626 (8th Cir.2000)). Moreover, the jury charge, taken as a whole, repeatedly and emphatically instructed the jury that it had to find that Robles intentionally engaged in the charged scheme. *See, e.g.*, A. 97 ("[T]he government must prove beyond a reasonable doubt that Mr. Robles knowingly, *willfully* and unlawfully entered into the conspiracy.... Willfully means to act with knowledge that one's conduct is unlawful *and with the intent* to do something that the law forbids, ...") (emphasis added). Accordingly, although the conspiracy charge made reference to knowledge of the illegal scheme, it also "clearly and conjunctively" required a finding of intent to participate. *Cf. Ferrarini*, 219 F.3d at 156 ("Although this definition of 'willful' includes references to knowledge, it also clearly and conjunctively requires a finding of intentional purposefulness."). We therefore perceive no error in the substance of the charge.[11]

## B. Venue

With respect to venue, all thirteen of the trades underlying the substantive securities and tender offer fraud counts were executed on the New York Stock Exchange ("NYSE") or American Stock Exchange ("AMEX"), both of which are located in the Southern District of New York. After each trade was completed, Robles received a written confirmation indicating the exchange at which the trade was executed. *See, e.g.*, A. 115 (trade confirmation corresponding to Count 9 of the Indictment).

Robles asserts that this is too tenuous a connection to the Southern District to establish venue. In addition, Robles contends that the jury instruction on venue was fatally flawed. We disagree.

### 1. Whether venue was proper in the Southern District of New York

Questions of jurisdiction and venue are questions of law, and this Court reviews them *de novo*. *See United States v. Kim*, 246 F.3d 186, 188 (2d Cir.2001) (citing *United States v. White*, 237 F.3d 170, 172 (2d Cir.2001)).

A criminal defendant has the right to be tried in the "district wherein the crime shall have been committed[.]" U.S. Const. amend. VI; *see* Fed.R.Crim.P. 18. "[W]here the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue." *United States v. Reed*, 773 F.2d 477, 480 (2d Cir.1985). Rather, venue is proper "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

Where a federal statute defining an offense does not explicitly indicate where a criminal act is deemed to have been committed, "the site of a charged offense " 'must be determined from the nature of the crime alleged and the location of the act or acts constituting it ....' "

---

11. Robles additionally argues that the placement of the conscious avoidance instruction amongst various general instructions at the end of the charge was improper. We disagree. The instruction clearly applied to any aspect of knowledge for which the appropriate factual predicate existed. Moreover, the wording of the instruction made clear that it applied to the question of whether Robles knew the true nature of the Svoboda's information. We therefore find that the placement of the charge was not in error.

*United States v. Cabrales*, 524 U.S. 1, 5, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) (quoting *United States v. Cabrales*, 109 F.3d 471, 472 (8th Cir.1997) (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946))). This Court has therefore held that, "[i]n a conspiracy prosecution, 'venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the coconspirators.'" *United States v. Smith*, 198 F.3d 377, 382 (2d Cir.1999) (quoting *United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir.1994) (quotation and citation omitted)). With respect to the individual securities and tender offer fraud counts, the venue provision of the Securities Exchange Act of 1934 (the "'34 Act") provides that "[a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa.

Robles likens the instant case to *United States v. Bezmalinovic*, 962 F.Supp. 435 (S.D.N.Y.1997), in which the court held that purely ministerial functions that are unintended and unforeseeable to a defendant are insufficient to establish venue. *See id.* at 441 (venue in bank fraud prosecution improper in the Southern District of New York where the defendant committed all relevant acts at banks in the Eastern District of New York and the only contact with the Southern District was the banks' cashing and payment of checks through their clearing houses in Manhattan). Robles argues that he neither intended nor could he have reasonably foreseen that the trades in question would be executed on the NYSE or AMEX.

The Government, on the other hand, relies on *United States v. Kim*, in which this Court held that knowingly causing an act in furtherance of the charged offense to occur in the district in question is sufficient to establish venue. *See Kim*, 246 F.3d at 192 (venue proper where the de-

fendant approved fraudulent invoices knowing that the victim paid its vendors from a bank located in the Southern District of New York).

Taken together, *Kim* and *Bezmalinovic* indicate that venue is proper in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue. *See Kim*, 246 F.3d at 192 (finding venue proper where the defendant "caused communications to be transmitted into and out of the Southern District when he approved fraudulent invoices knowing that [the victim] paid its vendors from New York banks"); *Bezmalinovic*, 962 F.Supp. at 438 (finding venue improper because the defendant neither intended nor could have foreseen the acts that occurred in the district of venue).

▮ In the instant case, there is nothing in the record to indicate that Robles intended the trades in question to be executed on either NYSE or AMEX. However, the fact that Robles was a savvy investor means that he could reasonably foresee that his trades would likely be executed on either NYSE or AMEX. More importantly, however, Robles had actual notice that his trades were being executed on NYSE and AMEX; the Government introduced individual trade confirmations from Robles' broker, Charles Schwab, reflecting that eight of the transactions in question were executed on NYSE or AMEX. *See* A. 109–116. Accordingly, unlike *Bezmalinovic*, there is evidence suggesting that Robles either knew, or could reasonably foresee, that his trades would be executed in the Southern District of New York. At a minimum, as soon as Robles received the first trade confirmation, it became foreseeable that his trades could be executed in the Southern District. This case is thus more analogous to *Kim*, as Robles ordered

trades knowing that they would be executed in the Southern District.[12]

For the foregoing reasons, we find that the execution of trades on the New York Stock Exchange and American Stock Exchange is sufficient to establish venue in the Southern District of New York.[13]

### 2. The venue instruction

 Robles additionally argues that, even if venue in the Southern District was theoretically proper, the jury instruction on venue was fatally flawed.[14] To begin, because Defendant failed to object to the substance of the venue instruction,

our review is for plain error. *See* Fed. R.Crim.P. 30(d), 52(b); *United States v. Crowley*, 318 F.3d 401, 414 (2d Cir.2003).[15] "For an error to be a 'plain error[ ] or [a] defect[ ] affecting substantial rights,' Fed. R.Crim.P. 52(b), it must be a 'clear' or 'obvious' deviation from current law that 'affected the outcome of the district court proceedings.'" *Crowley*, 318 F.3d at 414–15 (citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

 Since we conclude that the jury instruction on venue properly stated the

---

12. Robles also argues that venue in the Southern District of New York does not comport with the basic constitutional requirement that "the criminal acts in question bear 'substantial contacts' with any given venue." *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir.2000) (quoting *United States v. Reed*, 773 F.2d 477, 481 (2d Cir.1985)). We have no difficulty concluding that offenses involving trading on exchanges located in Manhattan bear a sufficient nexus with the Southern District to comport with this basic constitutional command.

13. We note that this conclusion is consistent with a number of district court decisions in this Circuit that have upheld venue where the only relevant contact to the venue was that various trades were executed in the district. *See, e.g., Sec. & Exch. Comm'n v. Thrasher*, 1993 WL 37044, *2 (S.D.N.Y. Feb. 8, 1993) (finding venue proper in the Southern District based on execution of trades on the New York Stock Exchange) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rajcher*, 609 F.Supp. 291, 293 (S.D.N.Y.1985) (citing *Blau v. Lamb*, 242 F.Supp. 151, 159–60 (S.D.N.Y.1965), *aff'd*, 363 F.2d 507 (2d Cir.1966), *cert. denied*, 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed.2d 542 (1967)); *Grossman v. Young*, 70 F.Supp. 970, 972 (S.D.N.Y.1947)). Robles contends that *Thrasher*, and the cases cited therein, involved civil enforcement of the securities laws and are thus inapposite. Indeed, the '34 Act's civil venue provision is somewhat broader than its criminal counterpart, providing that venue is proper in a district where a criminal proceeding could be brought "or in the district wherein the defendant is found or is an

inhabitant or transacts business ...." 15 U.S.C. § 78aa. These cases, however, appear to have been decided under the test set forth in the criminal venue provision and are thus relevant and instructive in the instant case.

14. At the close of evidence, the district court instructed the jury that

> you must consider the issue of venue; namely, whether any act in furtherance of the unlawful activity occurred within the Southern District of New York, which includes Manhattan. In this regard, the government need not prove that the crime charged was committed in the Southern District of New York or that the defendant or any alleged coconspirator was even physically present here. It is sufficient to satisfy the venue requirement if any act in furtherance of the crimes charged occurred within the Southern District of New York. Such an act would include, for example, the execution or settlement of a securities trade within this district.
>
> \* \* \* \* \* \*
>
> On this venue requirement only, the government meets its burden of proof if it establishes by a preponderance of the evidence that an act in furtherance of the crimes occurred within this district.
> A. 105–06.

15. Robles maintains that he did object to the content of the venue instruction. *See* Appellant's Reply Brief at 19–20. There is nothing in the record, however, to substantiate Defendant's claim. *Cf.* S.A. 188 (requesting that no charge on venue be given).

law in this Circuit, we find that there was no error, plain or otherwise, in this aspect of the charge. First, Robles argues that venue is an essential element of a criminal charge and must, therefore, be proven beyond a reasonable doubt. *See generally United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (holding that "materiality" of allegedly false statements is an essential element of the crime of making material false statements to a federal agency and thus must be submitted to the jury and proven beyond a reasonable doubt). However, this Court has repeatedly held that venue is *not* an essential element of the crime charged, *see, e.g., Smith,* 198 F.3d at 382 (citation omitted), and thus only requires proof by a preponderance of the evidence. *See, e.g., United States v. Bala,* 236 F.3d 87, 95 (2d Cir. 2000) ("[T]he government must prove venue by a preponderance of the evidence.") (citation omitted); *United States v. Middlemiss,* 217 F.3d 112, 121 (2d Cir.2000) ("The government must prove, 'by a preponderance of the evidence, that some part of the crime was committed within the district of the prosecution.'") (quotation omitted). In the instant case, the district court properly instructed the jury that "the government meets its burden of proof if it establishes by a preponderance of the evidence that an act in furtherance of the crimes occurred within his district." A. 106.

Second, Robles contends that the substantive test for venue should have read any act "constituting the offense" rather than any act "in furtherance" of the unlawful activity. In the instant case, the crimes charged are *trading* on insider information and conspiracy to *trade* on insider information. *Cf. United States v. Rodriguez–Moreno,* 526 U.S. 275, 280, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999) (socalled "verb test" is a useful analytical tool for determining where the relevant offense

conduct occurred). We find the distinction that Robles urges unpersuasive; the acts in furtherance, i.e., the trades executed in the Southern District, are also the acts constituting the offenses charged. In any event, the instruction that the district court gave was proper. *See United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir. 1984) (venue proper in any district in which some part of offense conduct occurred).

For the foregoing reasons, we find no error in the venue instruction.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.