*United States v. Miller*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of March, two thousand twenty.

PRESENT:
> ROBERT A. KATZMANN,
> *Chief Judge*,
> AMALYA L. KEARSE,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                 18-2315

NIMBOKO MILLER,

> *Defendant-Appellant*,

CHRISTOPHER SCOTT, CHRISTOPHER SCOTT, JR.,

> *Defendants*.

---

For Defendant-Appellant:                    VIVIAN SHEVITZ, South Salem, NY.

1

For Appellee:                                  NOMI D. BERENSON (Samuel P. Nitze, *on the brief*), Assistant United States Attorneys, *for* Richard P. Donoghue, United States Attorney, Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Donnelly, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Nimboko Miller appeals from a judgment of conviction entered by the district court (Donnelly, *J.*) on August 1, 2018, following a jury trial. Miller was convicted of bank fraud, in violation of 18 U.S.C. § 1344, and conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, in connection with a scheme to use a "straw buyer" named Andrea Murray to obtain a mortgage loan from Wells Fargo using falsified documents. Miller now argues that the district court erred by: (1) precluding him from introducing evidence that Wells Fargo was complicit in the bank fraud scheme; and (2) giving the jury a conscious avoidance instruction. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Beginning with Miller's first argument, the district court held that Miller could not introduce documents relating to a settlement that the Department of Justice ("DOJ") reached with Wells Fargo in connection with civil mortgage fraud claims. As relevant here, the court reasoned that Miller could not absolve himself of fraud liability by pointing to Wells Fargo's own wrongdoing. The court also explained that the documents were properly excluded under Federal Rules of Evidence 401 and 403 because they would be irrelevant and prejudicial.

We review the district court's evidentiary rulings for abuse of discretion, finding such abuse "only where the trial judge ruled in an arbitrary or irrational fashion." *United States v. Kelley*,

551 F.3d 171, 175 (2d Cir. 2009) (per curiam).[1] Here, even assuming that a victim's wrongdoing may in some cases absolve a defendant of fraud liability,[2] we find that the district court did not abuse its discretion by precluding Miller from introducing documents regarding DOJ's settlement with Wells Fargo. Miller argues that the evidence was relevant because it showed that Wells Fargo would "accept 'anything' on loan documents" and that any misstatements on Murray's mortgage application were therefore immaterial to the bank's decision to extend her a loan. Appellant's Br. 38. It was not irrational, however, for the district court to reach a contrary conclusion. The misconduct to which Wells Fargo admitted in the DOJ settlement involved the false certification of loans' eligibility for Federal Housing Administration ("FHA") insurance, and Miller proffered no connection between that misconduct and Murray's mortgage application.[3] Moreover, it was not arbitrary for the district court to rule that the relevance of any connection, if it existed, was substantially outweighed by the risk of unfair prejudice associated with introducing the documents, particularly given the scale of the misconduct to which Wells Fargo admitted.

Miller's second argument fares no better. After the close of evidence at trial, the district court instructed the jury on the two charges facing Miller: bank fraud and conspiracy to commit bank fraud. As relevant here, the court stated that the jury could "find that the defendant acted with the intent to defraud based on evidence that proves that . . . the defendant was aware of a high

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

[2] *But see United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) ("Two wrongs do not make a right, and lenders' negligence, or even intentional disregard, cannot excuse another's criminal fraud."); *United States v. Allen*, 201 F.3d 163, 167 (2d Cir. 2000) (per curiam) ("The victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for her substantive offense . . . .").

[3] Indeed, it appears undisputed that Murray's loan was not an FHA loan.

probability of the scheme to defraud a bank, and that he acted with reckless disregard for the truth or consciously or deliberately tried to avoid learning about the scheme to defraud the bank." Gov't App'x 268:2–8.

Miller's trial counsel did not object to this instruction, so his challenge on appeal is reviewed for plain error. *See United States v. Ghailani*, 733 F.3d 29, 52 (2d Cir. 2013). When reviewing a challenge to a conscious avoidance instruction, we ask whether "(a) the element of knowledge is in dispute, and (b) the evidence would permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Ebbers*, 458 F.3d 110, 124 (2d Cir. 2006). In the context of a conspiracy charge, it is permissible for the jury to "use the conscious avoidance doctrine to establish the defendant's knowledge of the aims of the conspiracy," *United States v. Reyes*, 302 F.3d 48, 55 (2d Cir. 2002), and a defendant's "intent to participate may be shown by a finding that the defendant either knew, or consciously avoided knowing, the unlawful aims of the charged scheme and intended to advance those unlawful ends," *United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003).

On appeal, Miller offers two reasons for his contention that the conscious avoidance instruction was plainly erroneous. First, Miller asserts that the instruction was overly broad because it allowed for a finding of guilt based on his mere presence rather than his intent to join the conspiracy. Second, Miller contends that "there is no *fact* that defendant Nimboko Miller may have consciously avoided confirming," Appellant's Br. 43, because "nothing showed he consciously avoided learning of the falsity of the mortgage application," *id.* at 44. We find both of these contentions to be meritless, and we conclude that the conscious avoidance instruction was not erroneous, let alone plainly so.

4

With respect to his first challenge to the instruction, Miller suggests that the jury was permitted to find that he intended to participate in the conspiracy based solely on his conscious avoidance of knowledge about the scheme. This suggestion is belied, however, by the district court's instruction that "[t]he government must prove beyond a reasonable doubt that the purpose of the conspiracy was to commit bank fraud and that the defendant knowingly and intentionally joined that conspiracy." Gov't App'x 276:24–277:2. Moreover, contrary to Miller's contention that the jury was permitted to convict him of conspiracy based on a finding that he was "merely present" while the mortgage fraud scheme was taking place, the district court "caution[ed] [the jury] that merely knowing or acquiescing without participation in the unlawful plan is not sufficient" to support a conviction. *Id.* at 282:2–4.

Miller's second challenge to the instruction is similarly unavailing. Notwithstanding his position that "there is no *fact* that defendant Nimboko Miller may have consciously avoided confirming," Appellant's Br. 43, the trial testimony makes clear that "the element of knowledge [wa]s in dispute," *Ebbers*, 458 F.3d at 124, regarding the false information contained in Murray's loan application. At trial, Murray testified that Miller orchestrated the loan application process and instructed her to sign an application that misstated, inter alia, her income, assets, and employment information. Miller, by contrast, testified that he was unaware that Murray's loan application contained misstatements. Furthermore, the government adduced more than enough evidence at trial to "permit a rational juror to conclude beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Ebbers*, 458 F.3d at 124. Not only did the government's witnesses testify that Miller was responsible for securing Murray's loan with fraudulent documents, but they also established that within days of the loan being funded, Miller received a check for $22,500 that was traceable to loan proceeds.

5

The government's witnesses also testified that Miller rented out the property that was purchased with the loan, and that he deposited rent checks and paid the mortgage and utility bills. Taken together, this evidence supported the government's primary theory at trial that Miller had actual knowledge of the misstatements in Murray's loan application, as well as its alternate theory that Miller consciously avoided such knowledge. *See Svoboda*, 347 F.3d at 480 ("[T]he same evidence that will raise an inference that the defendant had actual knowledge of the illegal conduct ordinarily will also raise the inference that the defendant was subjectively aware of a high probability of the existence of illegal conduct. Moreover, . . . a defendant's involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge.").

We have considered Miller's remaining arguments and have found in them no basis for reversal. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk