23-7168 (L)
*United States v. Greenberg*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of February, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER JR.,
> BETH ROBINSON,
> SARAH A. L. MERRIAM,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                               Nos. 23-7168 (L), 23-7249

JULIA GREENBERG, AKA SEALED DEFENDANT 3,
ULADZIMIR DANSKOI, AKA SEALED DEFENDANT 2,

> *Defendants-Appellants,*

YURY MOSHA, AKA SEALED DEFENDANT 1,
ALEKSEI KMIT, AKA SEALED DEFENDANT 4,
TYMUR SHCHERBYNA, AKA SEALED DEFENDANT 5,
KATERYNA LYSYUCHENKO,

*Defendants.*[*]

---

FOR APPELLANT GREENBERG:      BEAU B. BRINDLEY, The Law Offices of Beau B. Brindley, Chicago, IL.

FOR APPELLANT DANSKOI:      JAMES M. BRANDEN, Law Office of James M. Branden, Staten Island, NY.

FOR APPELLEE:      DAVID R. FELTON (Jonathan E. Rebold, Jacob R. Fiddelman, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from criminal judgments entered in the United States District Court for the Southern District of New York (Oetken, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that, for the reasons set forth in a separate *per curiam* opinion issued today and in this summary order, the September 8, 2023 and September 28, 2023 judgments are **AFFIRMED.**

Defendants-Appellants Julia Greenberg and Uladzimir Danskoi were convicted after a jury trial of a single count of conspiracy to commit immigration fraud. Danskoi was a partner at Russian America, an immigration services firm

---

[*] The Clerk's office is directed to amend the caption as reflected above.

in New York that purported to provide translation and other services for individuals in immigration proceedings, and Greenberg was an immigration attorney. The government presented evidence that Danskoi and other conspirators associated with Russian America steered clients into fraudulently applying for asylum based on fabricated stories, and that Greenberg then represented those individuals in immigration proceedings and further bolstered their applications, despite knowing that they contained false information.

The charged conspiracy based on this evidence had three alleged objectives: (1) defrauding the United States, in violation of 18 U.S.C. § 371; (2) immigration fraud by obtaining visas and asylum grants by means of false claims, statements, or other fraudulent means, in violation of 18 U.S.C. § 1546(a) para. 1; and (3) immigration fraud by knowingly presenting false statements under oath regarding a material fact in an application, affidavit, or other document required by the immigration laws, in violation of 18 U.S.C. § 1546(a) para. 4. Both Defendants were convicted pursuant to a general verdict following a two-week jury trial in December 2022.

On appeal, each defendant argues that the evidence was insufficient to show that he or she entered into an agreement with another person to pursue an

3

alleged object of the conspiracy[1] and that the district court erred by giving the jury a conscious avoidance charge.  In addition, Greenberg contends the district court committed plain error when it instructed the jury about an attorney's ethical duties.  We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.　　Sufficiency of the Evidence

We review a challenge to the sufficiency of the evidence *de novo*, meaning without deference to the district court's decision.  *United States v. Dove*, 884 F.3d 138, 150 (2d Cir. 2018).  In assessing the sufficiency of the government's evidence, "we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor."  *United States v. Heinemann*, 801 F.2d 86, 91 (2d Cir. 1986).[2]  "This deferential standard of review is especially important when reviewing a conviction of conspiracy because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a

---

[1] Greenberg poses a legal challenge concerning the second objective—immigration fraud in violation of 18 U.S.C. § 1546(a) para. 1.  We address this legal challenge in a separate published opinion issued contemporaneously with this summary order.

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019).

"To prove conspiracy, the government must show that two or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its general nature and extent, and that those persons agreed to participate in what they knew to be a collective venture directed toward a common goal. But the government need not prove that the defendant knew all of the details of the conspiracy or the identities of all of the other conspirators." *United States v. Jimenez*, 96 F.4th 317, 324 (2d Cir. 2024).

### A. 18 U.S.C. § 371

We first consider whether the evidence was sufficient to prove a conspiracy to "commit any offense against the United States, or defraud the United States, or any agency thereof in any manner or for any purpose[.]" 18 U.S.C. § 371. "To prove a conspiracy under the 'defraud clause,' the government must establish (1) that the defendant entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *United States v. Atilla*, 966 F.3d 118, 130 (2d Cir. 2020).

i. Danskoi

During the investigation, a confidential source known as CS-3 posed as an asylum applicant seeking the assistance of the Defendants; evidence regarding his application and his interactions with Defendants was introduced at trial. Danskoi contends the evidence was insufficient to show that he did not believe that CS-3 was gay when he helped CS-3 pursue an asylum claim based on feared persecution based on sexual orientation, and further argues that there is insufficient proof that he acted with anyone else.

There is ample evidence from which the jury could conclude that Danskoi believed that CS-3 was falsely claiming to be gay in his asylum application. For one, CS-3 testified that after he and Danskoi began discussing a claim based on sexual orientation persecution—an approach Danskoi identified as the best option—CS-3 expressly told him that he was "not a gay . . . not gay." Tr. 173:22.[3] Rather than changing course, Danskoi said that he "doesn't hear it" and that CS-3 should not be talking to him about that. *Id.* 173:24–25. Danskoi then referred CS-3 to an associate, Kateryna Lysyuchenko, whom he described as "sort of an expert talking about the subject," to help CS-3 develop his claim. *Id.* 174:11–12.

---

[3] "Tr." refers to the trial transcript available on the district court's docket.

Lysyuchenko, an indicted co-conspirator, gave CS-3 sample asylum narratives based on sexual orientation persecution, talked to him about his claim, and completed the application and wrote most of the accompanying narrative. When CS-3 returned to Danskoi's office to sign the final application, Danskoi recommended that CS-3 "look around in New York" for what CS-3 characterized as "[h]omosexual associated organizations." *Id.* 214:19–23. Neither Danskoi nor anyone in his office read the contents of the completed document to CS-3 in his native language.

In response to CS-3's request for an attorney to accompany him to the asylum interview, Danskoi arranged for Attorney Greenberg to represent CS-3. After CS-3 signed his application, Danskoi assured him that Greenberg would help him "strengthen his case" and "prepare for the interview." *Id.* 215:1–5.

This evidence is sufficient to support the conclusion that Danskoi conspired with one or more people to defraud the United States.

        ii. <u>Greenberg</u>

Similarly, when Greenberg met CS-3, she said, "Oh. You are going it as a gay." Tr. 231:5. CS-3 repeatedly implied that he was not, in fact, gay, responding to her initial question by saying, "Well, like as if," and explaining

7

that he didn't want to but "they said it is better that way." *Id.* 231:6, 8–9. He asked her, "Do I look like one?" *Id.* 231:12.

In preparing CS-3 for his interview, Greenberg coached CS-3 to style himself in a manner stereotypically associated with being gay. In preparing CS-3 to talk about a purported incident when he claimed to have been beaten up at a bar, she asked him what month the incident occurred. He said the narrative did not indicate a month and asked Greenberg, "What would be better?" *Id.* 248:25–49:1. Greenberg coached him to say the assault took place in March, because at that time Ukraine was still subject to the Soviet Union's criminal code that criminalized homosexuality. She told CS-3: "[T]hat's the explanation for why you didn't call the police." *Id.* 249:24–25. She also coached CS-3 to falsely state in his asylum interview that Russian America had provided only translation services and that they read his story back to him in his native language before it was submitted. Moreover, Greenberg submitted supplemental country conditions evidence to support CS-3's claim for persecution.

The government also introduced texts between Greenberg and Yury Mosha, who was Danskoi's partner at Russian America and an indicted co-conspirator. In the emails, Mosha arranged for a client, A.S., to meet with

Greenberg to discuss his asylum prospects. Before meeting with A.S. but after reviewing his paperwork, Greenberg texted Mosha that A.S.'s asylum claim was weak. When Greenberg met with A.S., she steered him toward seeking asylum based on sexual orientation, though he had provided no basis for such a claim. A.S. was not receptive to that approach, but Greenberg messaged Mosha after her meeting with A.S. and said, "He is 100, effectively 100 percent gay but does not admit." *Id.* 958:15–16.

Finally, the government introduced evidence that Russian America discussed Greenberg's fees with their clients, and when Greenberg did not receive a fee from a client referred by Russian America, she expected Russian America to ensure she was paid. In fact, before Greenberg's first meeting with A.S., Mosha told her not to discuss finances with A.S.

This evidence is sufficient to show that Greenberg entered into an agreement with one or more people to defraud the United States.

   B.  *18 U.S.C. § 1546(a) para. 4 ("Paragraph 4")*

We need not address Greenberg's separate contention that the evidence was insufficient to support a conviction for conspiracy to violate 18 U.S.C. § 1546(a) para. 4. Paragraph 4 makes it a crime to submit an application or other

9

document required by immigration laws knowing that it contains a false statement under oath. The government conceded at trial that this objective did not reach oral statements Greenberg made to immigration officials, and Greenberg contends the evidence is insufficient to show that she entered a conspiracy to enter any falsified documents.

Because we conclude that the evidence is sufficient to support Defendants' convictions based on the first objective identified in the indictment, we need not address Defendants' challenges to the sufficiency of the evidence with respect to this third object. *See United States v. Duncan*, 42 F.3d 97, 105 (2d Cir. 1994) ("[W]hen a defendant is convicted of a multiple object conspiracy by a general verdict, the conviction is sustainable if one of the conspiratorial objects is supported by the evidence, even if the other is not." (citing *Griffin v. United States*, 502 U.S. 46, 49 (1991)).[4]

---

[4] When a defendant challenges the *legal* rather than *evidentiary* adequacy of one of the possible bases for conviction, this rule does not apply. *Yates v. United States*, 354 U.S. 298, 311–12 (1957) ("In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."); *see also Griffin v. United States*, 502 U.S. 46, 59 (1991) ("When . . . jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence."). For that reason, by separate opinion issued contemporaneously with this order, we do address Greenberg's challenge to the legal sufficiency of the second alleged object of the conspiracy.

## II.        Conscious Avoidance Charge

"We review challenged jury instructions *de novo* but will reverse only if all of the instructions, taken as a whole, caused a defendant prejudice." *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011). "A conscious avoidance instruction may only be given if (1) the defendant asserts the lack of some specific aspect of knowledge required for conviction, and (2) the appropriate factual predicate for the charge exists." *United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003). Both Defendants challenge the factual predicate supporting the charge.

We reject their claims. Both Defendants argued to the jury that they were unaware of the falsity of various clients' asylum claims, and the evidence was sufficient to support a finding that both Defendants were "aware of a high probability" of the disputed fact and deliberately avoided confirming otherwise. *Id.* at 480. As stated above, when CS-3 explicitly told Danskoi he was not gay, Danskoi told him he did not want to hear it. That is textbook conscious avoidance. Similarly, CS-3 effectively – though not directly – conveyed the same information to Greenberg, who proceeded to coach him on how to make his story believable.

11

And we easily reject Greenberg's separate argument that the instruction allowed the jury to convict without evidence of actual intent to enter into an agreement. The district court expressly instructed otherwise:

> Here, because the Defendants are charged with participating in a conspiracy, it is also important to note that the concept of conscious avoidance cannot be used as a substitute for finding that the Defendants knowingly agreed to a joint undertaking, and you can only find the Defendants guilty if the evidence proves, beyond a reasonable doubt, that the Defendants knowingly and intentionally joined the conspiracy charged in the Indictment.

Jury Instructions at 47, No. 1:21-cr-00092(JPO) (S.D.N.Y. Dec. 16, 2022), ECF No. 187 ("Jury Instructions").

## III.  Legal Ethics Charge

Given Greenberg's role as a lawyer barred in New York, the district court instructed the jury as to her ethical duties. Greenberg did not challenge the instruction at trial but now argues that the instruction (1) should not have been given at all and (2) was erroneous. We review for plain error, meaning that Greenberg must show, among other things, that any claimed error affected her "substantial rights." *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020).

Greenberg specifically challenges the district court's instruction that "a USCIS agent conducting an asylum interview qualifies as a tribunal" for the purposes of New York professional conduct rules providing that if a lawyer comes to know of the material falsity of evidence offered to a tribunal by a client, or knows a client is engaging in fraudulent conduct relating to a proceeding before a tribunal, the lawyer must take "reasonable remedial measures, including, if necessary, disclosure to the tribunal." Jury Instructions at 39. Greenberg contends that an asylum interview is not a proceeding before a "tribunal" for purposes of this ethical rule.

We need not determine the application of these specific provisions of New York's ethics codes to asylum interviews because any error in giving this instruction, or in its precise formulation, did not affect her substantial rights.

Instructions about the ethical requirements that applied to Greenberg were relevant in light of her suggestion at trial that her conduct was consistent with her duty as a lawyer. But the instructions emphasized that "[p]roof that Greenberg violated one or more of her professional duties does not, without more, mean that she is guilty of any crime. That is, a lawyer can violate her ethical duties under New York law and Board of Immigration Appeals and

13

Immigration Court disciplinary rules without having the intent required to commit a crime." *Id.* at 41. Moreover, Greenberg herself testified that a USCIS proceeding *is* a tribunal. Insofar as the rules are relevant to Greenberg's state of mind, her understanding of the rules is what matters.

Moreover, the district court also instructed that "a lawyer is prohibited from counseling or assisting a client as to conduct that the lawyer knows is illegal or fraudulent," including by "suggesting how the wrongdoing might be concealed." *Id.* at 38. And the court instructed, "Although an attorney must use all reasonable lawful means to attain the objectives of the client, counsel is precluded from taking steps or in any way assisting the client in presenting false evidence or otherwise violating the law." *Id.* at 39. These instructions were not linked to the existence of any proceeding before a "tribunal." Greenberg does not challenge these instructions. For all of these reasons, any error with respect to a lawyer's duties to a tribunal did not affect Greenberg's substantial rights.

\* \* \*

We have considered Appellants' remaining arguments and conclude that they are without merit.  Accordingly, the District Court's judgments are

**AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court