09-5025-cv (L)
Terranova v. State of New York

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: October 14, 2011          Decided: April 16, 2012)

Docket Nos.  09-5025-cv(L), 10-3008-cv(CON)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN TERRANOVA, as the Administrator of the Estate of NICHOLAS TERRANOVA,

Plaintiff-Appellant,

DEVIN BALDWIN and LAMAR OLIVER,

Consolidated-Plaintiffs-Appellants,

v.

STATE OF NEW YORK and KEVIN QUINTERO, New York State Trooper,

Defendants,

RAFAEL TORRES, New York State Trooper and AARON RILEY, New York State Trooper,

Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, LYNCH, and CARNEY, Circuit Judges.

Appeal from a judgment entered in the United States District Court for the Southern District of New York (Cathy

---

* The Clerk of the Court is instructed to conform the caption in accordance herewith.

Seibel, Judge), following a jury verdict finding that defendants-appellees did not use unreasonable force in executing a traffic stop. Appellants principally challenge the district court's decision not to give a jury instruction on the use of deadly force. We affirm.

<div style="margin-left: 40%;">

MICHAEL J. GRACE, Grace & Grace, Yorktown Heights, New York, for Plaintiffs-Appellants.

OREN L. ZEVE, Managing-Administrative Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Benjamin Gutman, Deputy Solicitor General, and Richard O. Jackson, Assistant Solicitor General, of counsel, on the brief), for Eric T. Schneiderman, Attorney General for the State of New York, for Defendants-Appellees.

</div>

WINTER, Circuit Judge:

John Terranova, Devin Baldwin, and Lamar Oliver appeal from a jury verdict finding New York State Troopers Raphael Torres and Aaron Riley (collectively "Troopers") not liable for injuries that appellants, and, with respect to Terranova, the mortal injuries that appellant's decedent Nicholas Terranova, sustained during a traffic stop. Appellants claim that the Troopers violated appellants' Fourth Amendment right to be free from unreasonable seizure through the use of excessive force. We hold that the district court did not err by declining to instruct the jury regarding the use of "deadly force" in addition to a correct instruction on excessive force. Affirmed.

BACKGROUND

On the night of June 2, 2003, Riley was stationed on the Sprain Brook Parkway and received reports that motorcyclists were speeding and driving erratically while traveling north on the parkway. Speculating that the motorcyclists might return south, Riley enlisted the help of Torres to assist in stopping the motorcyclists if they returned southbound. Torres took a position south of Riley, who positioned himself to alert Torres to stop traffic if the motorcyclists passed. The Troopers testified that this plan was conceived to avoid a potentially dangerous high-speed chase.

At approximately 11:30 p.m., several motorcycles approached Riley's position and slowed to approximately 60 mph when they saw him on the side of the road. This group included appellants and a friend, Kyle Figueroa. After passing Riley, appellants increased their speed to greater than 80 mph. Figueroa was going significantly faster. The speed limit was 55 mph.

When the motorcyclists passed, Riley radioed to Torres to stop traffic, and Riley followed the motorcyclists. Torres chose a portion of the parkway with a long straightaway where vehicles could see his lights and stop safely. He then drove in a serpentine motion to slow traffic and brought it to a stop, causing several vehicles to clog the right and center lanes. In the left lane, Figueroa, who had reached the

roadblock faster than appellants, had also come to a stop. According to Torres, none of the vehicles had any difficulty stopping.

As appellants approached the traffic stoppage, they saw the brake lights of the stopped vehicles and the emergency lights on Torres's cruiser. Baldwin, who was in front, had slowed to between 30 and 35 mph as he approached Figueroa in the left lane. When Baldwin was approximately 15-20 feet from Figueroa, a BMW that had been stopped in the center lane abruptly moved into the left lane, and Baldwin collided with that vehicle. Terranova, who was behind Baldwin, drove into the median to avoid the collision and came to stop on the grass. Oliver, who was behind Terranova, also drove into the median to avoid the accident and jumped off his motorcycle. Oliver's unmanned motorcycle struck Terranova in the chest, and Terranova died from the injuries he sustained.

Both Figueroa and the driver of the BMW testified that Torres directed the BMW to enter the left lane, but Torres stated that the BMW changed lanes of its own accord.

Appellants then brought this action seeking damages under 42 U.S.C. § 1983 for violation of their Fourth Amendment rights, claiming that they were seized without justification and that the Troopers used excessive force. The case proceeded to trial.[1]

---

[1] The State of New York and Trooper Quintero were dismissed as defendants prior to trial and are not a part of this appeal. See Terranova v. New York, 144 F. App'x 143, 147 (2d Cir. 2005) (upholding dismissal of claims against the State of New York); Terranova v. Torres, 603 F. Supp. 2d 630, 631 n.2 (S.D.N.Y. 2009) (granting summary judgment in favor of Trooper Quintero).

4

During trial, the district court originally proposed to give instructions to the jury that included a separate "deadly force" charge with regard to the factors outlined by the Supreme Court in Tennessee v. Garner, 471 U.S. 1 (1985), as preconditions to the lawful use of deadly force.  However, the district court ultimately removed that instruction, concluding that, under Scott v. Harris, 550 U.S. 372 (2007), it was inappropriate to instruct the jury on the Garner factors in cases with dissimilar facts.  The resulting jury instructions informed the jurors that they were to decide whether the force used was objectively reasonable and specified the various factors that might affect that determination, such as the severity of the violation, the threat posed by the appellants, whether the appellants attempted to evade the police, and what other options, if any, were available to the Troopers.

The jury rendered a verdict in favor of the Troopers. Appellants then filed motions for judgment notwithstanding the verdict and for a new trial, which were denied.  This appeal followed.

DISCUSSION

We review jury instructions de novo with regard to whether the jury was misled or inadequately informed about the applicable law.  Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 146 (2d Cir. 2010).

Claims that the police used excessive force are "judged under the Fourth Amendment's 'objective reasonableness' standard." Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). This requires a "balancing of the . . . intrusion on 'the individual's Fourth Amendment interests' against the countervailing governmental interest at stake," Graham, 490 U.S. at 396 (quoting Garner, 471 U.S. at 8), and involves the consideration of factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Appellants make no claim that the district court's instructions failed to convey the proper standards as to objectively reasonable force. However, appellants argue that Garner established constitutional preconditions for the use of deadly force and that, by failing to instruct the jury on the Garner factors, the court left the jurors inadequately informed as to the law. We disagree.

In Garner, a police officer shot a fleeing suspect. 471 U.S. at 3-4. The suspect, who was "young, slight, and unarmed," had broken into a house, and when the police arrived, the suspect attempted to flee. Id. at 4, 21. Fearing that the suspect, who was climbing a fence, would successfully escape, the officer shot him in the back of the head. Id. at 4. In

concluding that the officer's use of force was unreasonable, the Court stated: "[I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." Id. at 11-12.

Following Garner, some courts held that "the Supreme Court . . . established a special rule concerning deadly force," which could require a separate jury instruction in any case in which police conduct created a substantial risk of death or serious bodily injury. Vera Cruz v. City of Escondido, 139 F.3d 659, 661, 663 (9th Cir. 1997), modified, Smith v. City of Helmet, 394 F.3d 689, 705 (9th Cir. 2005) (holding that "deadly force" means all force that creates a substantial risk of death of serious bodily injury rather than force that is reasonably likely to cause death); see also Adams v. St. Lucie Cnty. Sheriff's Dep't, 962 F.2d 1563, 1570-71 (11th Cir. 1992) (applying Garner to a vehicular chase on summary judgment). However, the Court's more recent decision in Scott, involving facts similar to those in the present matter, rejected the view that Garner created a special rule, separate from the usual reasonableness analysis, that applies to any form of police conduct that might possibly result in death or serious injury.

In Scott, police officers initiated a high-speed chase in an attempt to stop the plaintiff, who was driving recklessly and at high speeds. 550 U.S. at 379-80. The chase was ultimately terminated when a police officer ran into the rear of the plaintiff's vehicle, causing an accident that resulted in serious injuries to the plaintiff. Id. at 375. There, as here, the plaintiff argued that the Garner factors should determine whether the use of deadly force was appropriate. Id. at 381-82. However, the Court rejected that approach, stating, "Garner was simply an application of the Fourth Amendment's 'reasonableness' test . . . to the use of a particular type of force in a particular situation." Id. at 382 (citing Graham, 490 U.S. at 388). The Court made clear that consideration of the factors that might have justified the shooting in Garner was not needed in cases involving police actions of less coercion. More specifically, it held that Garner does not apply in cases involving accidents that occur when police attempt to stop a vehicle. See id. at 383 ("Whatever Garner said about the factors that might have justified shooting the suspect in that case, such 'preconditions' have scant applicability to this case, which has vastly different facts. 'Garner had nothing to do with one car striking another or even with car chases in general.'" (quoting Adams, 962 F.2d 1563, 1577 (11th Cir. 1992) (Edmondson, J., dissenting)).[2]

_____

[2] The Court reached this conclusion after acknowledging that the officer's actions placed the plaintiff "at risk of serious injury or death." Id. at 374.

We therefore conclude that, absent evidence of the use of force highly likely to have deadly effects, as in <u>Garner</u>, a jury instruction regarding justifications for the use of deadly force is inappropriate, and the usual instructions regarding the use of excessive force are adequate. <u>Id.</u>; <u>see also</u> <u>Penley v. Eslinger</u>, 605 F.3d 843, 850 (11th Cir. 2010) ("[N]one of these [<u>Garner</u>] conditions are prerequisites to the lawful application of deadly force."); <u>Pasco ex rel. Pasco v. Knoblauch</u>, 566 F.3d 572, 579-80 (5th Cir. 2009) (finding no specific <u>Garner</u> application to car chases and that the inquiry depends instead on what was objectively reasonable); <u>Acosta v. Hill</u>, 504 F.3d 1323, 1324 (9th Cir. 2007) (holding that after <u>Scott</u>, a separate jury charge specifically on the use of deadly force is unnecessary).

The present matter is easily distinguishable from <u>Garner</u> given the type of force used -- a traffic stop as opposed to firing a gun aimed at a person. While a traffic stop poses some risks, it is designed only to apprehend suspects and, here, prevent injury to other motorists as well as appellants. It is not designed to achieve those goals by seriously injuring the suspects.

The appropriate inquiry is, therefore, whether the force used was objectively reasonable. The absence of a deadly force instruction neither misled the jury nor left them uninformed as to the applicable law.

## CONCLUSION

We have considered appellants' additional claims and find them to be without merit.  For the foregoing reasons, we affirm.