**13-1327-cv; 13-1892-cv**
*Steginsky v. Xcelera Inc.*

# In the

# United States Court of Appeals

## For the Second Circuit

———

AUGUST TERM, 2013

ARGUED: OCTOBER 30, 2013
DECIDED: JANUARY 27, 2014

Nos. 13-1327-cv; 13-1892-cv

GLORIA STEGINSKY,
*Plaintiff-Appellant-Cross-Appellee,*

*v.*

XCELERA INC., VBI CORPORATION, ALEXANDER M. VIK, GUSTAV M.
VIK,
*Defendants-Appellees-Cross-Appellants,*

HANS EIRIK OLAV, OFC LTD.,
*Defendants-Appellees.*

———

Before: WALKER, CABRANES, and PARKER, *Circuit Judges.*

———

Plaintiff Gloria Steginsky, a former minority shareholder of Xcelera Inc., appeals the dismissal of her securities fraud claims by the United States District Court for the District of Connecticut (Stefan R. Underhill, *District Judge*). Her complaint alleged that Xcelera insiders purchased Xcelera stock by making a tender offer

through a shell corporation without disclosing any information about Xcelera's financial state. We hold that the duty of corporate insiders to either disclose material nonpublic information or abstain from trading is defined by federal common law and applies to unregistered securities, and that the district court thus erred in dismissing plaintiff's insider trading claims. We VACATE the dismissal of her insider trading claims under sections 10(b), 20(a), and 20A(a) of the Securities Exchange Act, and of her pendent nonfederal claims for breach of fiduciary duty. However, we AFFIRM the dismissal of her market manipulation claims, and of her insider trading claims under section 14(e) of the Securities Exchange Act.

————

JEFFREY S. ABRAHAM (Philip T. Taylor, *on the brief*), Abraham, Fruchter & Twersky, LLP, New York, NY, *for Plaintiff-Appellant-Cross-Appellee*.

PETER J. MACDONALD (David F. Olsky, Jacob Press, Wilmer Cutler Pickering Hale and Dorr LLP, and Charles W. Pieterse, Whitman Breed Abbott & Morgan LLC, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, *for Defendants-Appellees-Cross-Appellants.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff Gloria Steginsky, a former minority shareholder of Xcelera Inc., appeals the dismissal of her securities fraud claims by the United States District Court for the District of Connecticut (Stefan R. Underhill, *District Judge*). Her complaint alleged that Xcelera insiders purchased Xcelera stock by making a tender offer through a shell corporation without disclosing any information about Xcelera's financial state. We hold that the duty of corporate insiders to either disclose material nonpublic information or abstain from trading is defined by federal common law and applies to

unregistered securities, and that the district court thus erred in dismissing plaintiff's insider trading claims. We VACATE the dismissal of her insider trading claims under sections 10(b), 20(a), and 20A(a) of the Securities Exchange Act, and of her pendent nonfederal claims for breach of fiduciary duty. However, we AFFIRM the dismissal of her market manipulation claims, and of her insider trading claims under section 14(e) of the Securities Exchange Act.

## BACKGROUND

Because the district court dismissed plaintiff's claims on the pleadings, we must accept the complaint's factual allegations as true for the purposes of this appeal. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Plaintiff Gloria Steginsky was a minority shareholder of Xcelera who sold her 100,010 shares in 2011 pursuant to a tender offer for $0.25 per share. She alleges violations of securities law and breaches of fiduciary duty by six defendants. Defendant Xcelera is a Cayman Islands holding corporation, based in Connecticut, with operating subsidiaries and financial interests in the computer and software industries. At all relevant times, Xcelera has been controlled by the three "Vik defendants": Alexander Vik is Chairman of the Board and Chief Executive Officer; Gustav Vik is Director, Executive Vice President, Secretary, and Treasurer; and VBI Corporation (owned by Alexander and Gustav's father, Erik Vik) is Xcelera's majority shareholder.[1] Defendant OFC Ltd. is incorporated in Malta and was created by the Vik defendants in 2010 as a vehicle to make a tender offer for Xcelera shares. Finally, defendant Hans Eirik Olav is an Xcelera Director who was listed as the OFC contact person with respect to the tender offer.

---

[1] The complaint also notes that "according to a declaration filed by defendant Alexander M. Vik in [a separate case], 'Xcelera is controlled by VBI.'" Complaint ¶ 11 (quoting Declaration of Alexander M. Vik at 6, *Sebastian Holdings, Inc. v. Kugler*, No. 3:08-cv-1131 (D. Conn. Oct. 31, 2008), ECF No. 23-2).

According to the complaint, Xcelera common stock traded on the American Stock Exchange for a high of $110/share in 2000 during the so-called dotcom bubble. In 2004, after the price plummeted to around $1/share, the Vik defendants began to refuse to make required filings with the Securities Exchange Commission ("SEC"). Because of this non-compliance, the American Stock Exchange delisted Xcelera stock in 2004, and the price then dropped to around $0.25/share. In 2006, the SEC revoked the registration of all Xcelera securities. Since 2005, none of the defendants have disclosed any information concerning Xcelera's financial condition.

After the de-registration of Xcelera securities by the SEC, investors were told by the company that they could sell their stock back to Xcelera for $0.25/share. In December 2010, OFC made a tender offer for Xcelera stock, listing Olav as the contact person, at $0.25/share. The complaint alleges that OFC is only a shell company, and that the tender offer was in fact orchestrated by Xcelera and the Vik defendants, who have previously used Maltese companies to conceal their identities. No information about Xcelera's financial conditions was disclosed in connection with the tender offer. In April 2011, plaintiff sold her 100,010 shares of Xcelera common stock to OFC pursuant to the tender offer.

In February 2012, plaintiff filed the complaint in this case, alleging breach of fiduciary duty and violations of sections 10(b), 14(e), 20A(a), and 20(a) of the Securities Exchange Act through both market manipulation and insider trading. In June 2012, Xcelera and the Vik defendants moved to dismiss, and plaintiff sought a default judgment against OFC, who had failed to appear.[2] The district court properly applied an identical standard in assessing the two motions and accepted all of the complaint's factual allegations as true. *See* Fed. R. Civ. P. 12(b)(6); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) ("[A] default judgment entered on well-pleaded

_____

[2] Olav entered an appearance in September 2012; he has not moved to dismiss, nor was he the subject of plaintiff's motion for a default judgment.

allegations in a complaint establishes a defendant's liability."), *rev'd on other grounds*, 409 U.S. 363 (1973). The district court concluded, however, that plaintiff failed to state a claim as a matter of law, and therefore dismissed both her market manipulation and insider trading claims. It then concluded that it was "compelled" to dismiss the pendent fiduciary duty claims without prejudice to refiling in state court. Although the district court did not expressly address the §§ 20A(a) and 14(e) claims, it then denied plaintiff's motion for default judgment and granted defendants' motion to dismiss the complaint in its entirety. *Steginsky v. Xcelera, Inc.*, No. 3:12-cv-188, 2013 WL 1087635 (D. Conn. Mar. 14, 2013). Plaintiff appeals the dismissal of her claims, and defendants cross-appeal the district court's decision to not exercise supplemental jurisdiction over the pendent claims.

## DISCUSSION

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6), accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *ATSI*, 493 F.3d at 98. A complaint alleging securities fraud must "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). Private securities fraud actions also must meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). When plaintiff alleges a false statement or omission, the complaint must specify "the reason or reasons why the statement is misleading" and must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Additionally, when a cause of action requires proof of scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).

Plaintiff raises three types of claims, which we address in turn: (1) securities fraud through market manipulation; (2) securities fraud through insider trading; and (3) breach of fiduciary duty.

## I. Market Manipulation Claims

Plaintiff's theory of market manipulation is that defendants manipulated the price of Xcelera stock downward by refusing to make required SEC filings starting in 2004, causing Xcelera to be de-listed by the American Stock Exchange in 2004 and then de-registered by the SEC in 2006. Defendants could then buy back Xcelera stock at artificially depressed prices. "Market manipulation requires a plaintiff to allege (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI*, 493 F.3d at 101. "Because a claim for market manipulation requires a showing of scienter, the PSLRA's heightened standards for pleading scienter also apply." *Id.* at 102.

Plaintiff's counsel has previously asserted this theory while representing other minority shareholders in a different suit against Xcelera and the Vik defendants, which described the same refusal to make SEC filings. In a summary order in that case, we affirmed the district court's denial of leave to amend the complaint to add securities law claims, concluding that "[a]bsent any allegation of a 'going private' transaction, tender offer, or scheme to take advantage of depressed share prices, we cannot conclude that [the] urged inference of scienter is compelling." *Feiner Family Trust v. VBI Corp.*, 352 F. App'x 461, 464 (2d Cir. 2009). In this case, the inference of fraud is strengthened by new allegations regarding the 2010 tender offer that were absent from the earlier suit, although the scheme remains somewhat implausible due to the six-year gap between the alleged decision to depress the stock in 2004 and the effort to repurchase stock in 2010.

But we need not determine whether the market manipulation claims are adequately pled because it is plain that these claims are not timely filed. A securities fraud claim must be filed "not later than *the earlier of*—(1) 2 years after the discovery of the facts

constituting the violation; *or* (2) 5 years after such violation." 28 U.S.C. § 1658 (emphasis added). Plaintiff argues that the complaint was filed within two years of the tender offer, which was a fact necessary to establish scienter, and she points to the Supreme Court's discussion of the onset of the two-year period in *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010). But in *Merck*, "no one doubt[ed] that [the complaint] was filed within five years of the alleged violation." *Id.* at 638. In this case, the alleged manipulation commenced with the refusal to make SEC filings from 2004 to 2006, which is more than five years before the complaint was filed in 2012. Because the market manipulation claims were untimely, they were properly dismissed, even though the district court dismissed them for failure to plead scienter. *See Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275 (2d Cir. 1998) ("It is well settled that we may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." (internal quotation marks omitted)).

## II. Insider Trading Claims

Plaintiff's insider trading claims are based on the alleged purchase of Xcelera securities by Xcelera insiders through the tender offer without disclosing to potential sellers any information about Xcelera's financial state. Because the complaint was filed within two years of the 2010 tender offer (and the purchase of plaintiff's shares in 2011), these claims are timely. *See* 28 U.S.C. § 1658.[3]

"Under the 'traditional' or 'classical theory' of insider trading liability, § 10(b) [15 U.S.C. § 78j(b)] and Rule 10b–5 [17 C.F.R. § 240.10b-5] are violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic

---

[3] An even longer statute of limitations applies to plaintiff's insider trading claims under section 20A. *See* 15 U.S.C. § 78t-1(b)(4) ("No action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation.").

information." *United States v. O'Hagan*, 521 U.S. 642, 651-52 (1997).[4] Thus, "a corporate insider must abstain from trading in the shares of his corporation unless he has first disclosed all material inside information known to him." *Chiarella v. United States*, 445 U.S. 222, 227 (1980). "[I]f disclosure is impracticable or prohibited by business considerations or by law, the duty is to abstain from trading." *SEC v. Obus*, 693 F.3d 276, 285 (2d Cir. 2012).

To establish an insider trading claim, it is not necessary to show that corporate insiders *used* the nonpublic information; it is sufficient to prove that they traded their corporation's securities "while knowingly in possession of the material nonpublic information." *United States v. Rajaratnam*, 719 F.3d 139, 159 (2d Cir. 2013) (internal quotation mark omitted) (quoting *United States v. Teicher*, 987 F.2d 112, 119 (2d Cir. 1993)). Additionally, the Supreme Court has "dispensed with a requirement of positive proof of reliance, where a duty to disclose material information had been breached, concluding that the necessary nexus between the plaintiffs' injury and the defendant's wrongful conduct had been established." *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988); *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008).

In this case, plaintiff has pled that the defendants are officers, directors, or controlling shareholders, which plainly makes them Xcelera insiders.[5] According to the complaint, Alexander Vik and Gustav Vik are directors and officers; Erik Vik's corporation—

---

[4] The alternative "misappropriation theory" of insider trading, which targets non-insiders, is not applicable here. *See O'Hagan*, 521 U.S. at 652.

[5] Officers and directors are the "easiest category," and controlling shareholders are insiders because they "have the same sort of access to information as a result of their position of power as the typical officer and director." 18 Donald C. Langevoort, *Insider Trading Regulation, Enforcement, and Prevention* §§ 3:3-3:4 (2013); *see O'Hagan*, 521 U.S. at 652; *Chiarella*, 445 U.S. at 227.

defendant VBI—is the majority shareholder; Hans Eirik Olav is a director; and the Vik defendants control shell corporation OFC.

These insiders are alleged to have traded in Xcelera securities through their control of OFC, when the Vik defendants caused OFC to purchase plaintiff's Xcelera stock through the tender offer, with Olav listed as the contact person. And it is not disputed that defendants (including OFC) failed to provide *any* information to plaintiff about Xcelera's financial state at any time leading up to her sale to OFC. Plaintiff thus claims that defendants are liable for OFC's actions either as primary violators under section 10(b) or as "control persons" subject to secondary liability under section 20(a).[6]

The district court held, however, that defendants had no duty to disclose any information before trading in Xcelera securities because the duty to disclose (1) does not apply to unregistered securities and (2) is defined by the law of the Cayman Islands, under which Xcelera was formed, and where no such duty exists. Both conclusions are in error: unregistered securities are not immune from the duty to disclose, and Cayman law is inapplicable.

First, the duty of corporate insiders to abstain from trading or to disclose material inside information applies to unregistered securities. Section 10(b) explicitly applies to "any security registered on a national securities exchange *or any security not so registered*." 15 U.S.C. § 78j(b) (emphasis added). We have explicitly stated that "closed corporations that purchase their own stock have a special obligation to disclose to sellers all material information." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 179 (2d Cir. 2001).

Second, we hold that the fiduciary-like duty against insider trading under section 10(b) is imposed and defined by federal common law, not the law of the Cayman Islands. While we have not

---

[6] Section 20(a) establishes secondary liability for "[e]very person who, directly or indirectly, controls any person" directly liable under the Securities Exchange Act. 15 U.S.C. § 78t(a); *see SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).

previously made the source of this duty explicit, we agree with one district court in this Circuit which concluded that insider trading cases from this Court and the Supreme Court have implicitly assumed that the relevant duty springs from federal law, and that looking to idiosyncratic differences in state law would thwart the goal of promoting national uniformity in securities markets. *See United States v. Whitman*, 904 F. Supp. 2d 363, 369 (S.D.N.Y. 2012) (collecting cases); *see also McClure v. Borne Chem. Co.*, 292 F.2d 824, 834 (3d Cir. 1961) ("[The Securities Exchange Act] creates many managerial duties and liabilities unknown to the common law."); *In re Cady, Roberts & Co.*, 40 S.E.C. 907, 910 (1961) ("[T]he securities acts may be said to have generated a wholly new and far-reaching body of Federal corporation law."); 18 Langevoort, *supra*, § 3:2.

Defendants erroneously suggest that holding them subject to the duty to disclose would impose an affirmative duty on small, unregistered corporations to disclose audited financial statements. Under the Securities Exchange Act, "any insider 'in possession of material inside information must *either* disclose it to the investing public, or, if . . . he chooses not to do so, must *abstain from trading in or recommending* the securities concerned while such inside information remains undisclosed.'" *Castellano*, 257 F.3d at 179 (emphasis added) (quoting *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir. 1968) (en banc)). Defendants had no general affirmative duty to disclose once Xcelera was deregistered by the SEC, but they could not trade in Xcelera shares based on undisclosed material inside information that they possessed.

Because the district court erred in concluding that the duty to disclose or abstain from trading did not apply to defendants, we vacate the dismissal of both the direct liability claims under section 10(b) and Rule 10b–5 and the "control person" liability claims under section 20(a). *Cf. Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 170-71 (2d Cir. 2000) (vacating the dismissal of a section 20(a) claim upon concluding that the district court improperly dismissed claims based on primary Rule 10b–5 violations).

Plaintiff also brought claims for insider trading under section 20A(a) of the Securities Exchange Act, which provides an express private right of action for those who trade contemporaneously with an inside trader. 15 U.S.C. § 78t-1; *see generally Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 703 (2d Cir. 1994) (concluding that § 20A liability requires an independent Securities Exchange Act violation). Because the district court did not address these claims, we vacate their dismissal and remand for further consideration.[7]

However, we affirm the dismissal of plaintiff's claims under section 14(e) of the Securities Exchange Act, 15 U.S.C. § 78n(e), for trading on material, nonpublic information in connection with a tender offer. SEC Rule 14e-3, which imposes liability under section 14(e), states that if "any person" has taken substantial steps toward a tender offer, then it is unlawful for "any *other* person who is in possession of material information *relating to such tender offer* . . . to purchase or sell or cause to be purchased and sold any of such securities." 17 C.F.R. § 240.14e-3(a) (emphases added). In this case, the allegation is not that someone possessed material nonpublic information *about* the tender offer—it is that the tender offer *itself* was made by corporate insiders who possessed material nonpublic information. The section 14(e) claims were thus properly dismissed.

---

[7] The availability of section 20A in a case such as this appears unsettled. *Compare Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1337 (7th Cir. 1997) (holding that section 20A may not be used by a person in privity with the insider because "[t]his interpretation would amount to saying that Congress, in attempting to provide additional relief for victims of insider trading, had inadvertently enacted a five-year statute of limitations applicable in effect to a vast number of Rule 10b-5 cases"), *with Johnson v. Aljian*, 490 F.3d 778 (9th Cir. 2007) (holding that a 20A claim is actionable when the predicate 10b-5 claim is time-barred). However, it may be unnecessary to reach this question because plaintiff has adequately pled liability under section 10(b), and section 20A provides no additional remedy. *Cf. O'Hagan*, 521 U.S. 665 n.11 (finding it unnecessary to address section 20A(a) when liability exists under section 10(b)).

**III. Nonfederal Claims for Breach of Fiduciary Duty**

In addition to her claims under the Securities Exchange Act, plaintiff also alleged that Xcelera, Gustav Vik, Alexander Vik, and Olav breached their fiduciary duties under Cayman Island law to Xcelera's minority shareholders, or aided and abetted the breach of such duties. After dismissing plaintiff's federal claims, the district court declined to exercise supplemental jurisdiction over these pendent claims and dismissed them without prejudice to refiling in state court. Because we have reinstated plaintiff's insider trading claims, we vacate the dismissal of these nonfederal claims.

## CONCLUSION

For the reasons stated above, we AFFIRM the dismissal of plaintiff's market manipulation claims and her section 14(e) insider trading claims; VACATE the dismissal of her insider trading claims under sections 10(b), 20(a), and 20A(a) of the Securities Exchange Act and her pendent nonfederal claims for breach of fiduciary duty; and REMAND for further proceedings consistent with this Opinion.