**UNITED STATES of America**

v.

**David RILEY and Matthew Teeple, Defendants.**

**No. 13 CR 339(RPP).**

United States District Court, S.D. New York.

Jan. 29, 2014.

Steve C. Lee, New York, NY, for Plaintiff.

John Francis Kaley, Doar, Rieck, Kaley & Mack, New York, NY, for Defendant.

## OPINION & ORDER

ROBERT P. PATTERSON, JR., District Judge.

### I. Introduction

On December 10, 2013, Defendant David Riley filed a motion seeking to transfer the above-captioned case to the Northern District of California, pursuant to Federal Rule of Criminal Procedure 21(b). (Def. David Riley's Mem. of Law in Supp. of Rule 21 Mot. to Transfer ("Riley Mot."), ECF No. 47.) Riley's Co–Defendant, Matthew Teeple, joined in Riley's motion to transfer the case on December 11, 2013. (Def. Matthew Teeple's Mot. Joining Co–Def. Riley's Mot. ("Teeple Mot."), ECF No. 50.) The Government filed a memorandum of law in opposition to the Defendants' motion on December 23, 2013. (Gov't Mem. of Law in Opp'n to Mot. to Transfer ("Gov't Opp'n"), ECF No. 56.) Teeple filed a reply in support of the motion to transfer on December 26, 2013 (Def. Matthew Teeple's Reply Mem. of Law in Supp. of Mot. to Transfer ("Teeple Reply"), ECF No. 57), and Riley submitted a reply letter in support of the motion on December 30, 2013. (Dec. 30 Letter as to David Riley by John Kaley ("Riley Reply").)

For the reasons that follow, the Defendants' motion is DENIED.

### II. Factual Background [1]

On March 8, 2013, the grand jury returned an indictment (the "Indictment") charging the Defendants with one count of conspiracy to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regu-

---

1. The factual and procedural history of this case was also discussed at length in the Court's Opinion and Order dated January 7, 2014. (*See* Op. & Order as to David Riley, Matthew Teeple ("Op. & Order"), ECF No. 58.)

lations, Sections 240.10b–5 and 240.10b5–2, and three counts of substantive securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17 Code of Federal Regulations, Sections 240.10b–5 and 240.10b5–2; and Title 18, United States Code, Section 2. (Indictment filed as to David Riley, Matthew Teeple ("Indictment") ¶¶ 18, 19, 23, ECF No. 13.) Defendant Riley was arrested on March 26, 2013, in the Northern District of California, and Defendant Teeple was arrested on March 28, 2013, in the Central District of California. (*See* Criminal Docket for Case No. 13 CR 339.)

The charges in the Indictment relate to an alleged scheme to cause others to trade in securities of Foundry Networks, Inc. ("Foundry") based on material, nonpublic information ("MNPI"). (Indictment ¶ 7.) Specifically, the Indictment alleges that Riley, who was previously employed as a Vice-President and the Chief Information Officer at Foundry, obtained MNPI about the company during the course of his employment. (*Id.* ¶¶ 1, 7.) Riley is alleged to have provided the MNPI to Teeple, who was then employed as an analyst for "Investment Adviser A." (*Id.* ¶¶ 2, 7.) Teeple is alleged to have caused others, including Investment Adviser A, to execute transactions in Foundry based, in whole or in part, on the MNPI that Riley had provided him. (*Id.* ¶ 7.)

The Indictment alleges that Investment Adviser A "used a prime broker located in New York, New York, among other things, to trade shares of Foundry." (*Id.* ¶ 2.) The Government also stated during oral argument that evidence at trial will show that Goldman Sachs & Co., Inc., in Manhattan, was the prime broker used to facilitate the execution of the trades, (Tr. of Proceedings on Dec. 4, 2013 ("12/4/13 Tr.") at 13, ECF No. 51), and that certain of the unlawful securities transactions made pursuant to the Defendants' scheme took place on exchanges located in Manhattan, including the New York Stock Exchange and the International Securities Exchange. (*See* Gov't Opp'n at 2.) With the exception of these acts which occurred in New York, many of the actions of the Defendants described in the Indictment took place in California—primarily in the Northern District of California. (*See* Riley Mot. at 1.) The misappropriation by Riley of information belonging to Foundry was alleged to have occurred at Foundry's headquarters in Santa Clara, California (in the Northern District), telephone calls and meetings between Riley and Teeple occurred while both were in California, and trades executed by Investment Adviser A were made from Investment Adviser A's principal place of business in San Francisco, California (in the Northern District). (*Id.* at 1–2.) The telephone calls between Teeple and others who then executed securities transactions in Foundry based on MNPI also occurred in California, and, in one instance, in Colorado. (*See* Mem. in Supp. of Def.'s Mot. to Dismiss for Improper Venue at 1, ECF No. 34.)

### III. Legal Standard

Rule 21(b) of the Federal Rules of Criminal Procedure states that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed.R.Crim.P. 21(b). Such a motion to transfer "may be made at or before arraignment or at any other time the court or these rules prescribe." Fed.R.Crim.P. 21(d). "Disposition of a Rule 21(b) motion is vested in the sound discretion of the district court." *United States v. Maldonado–Rivera*, 922 F.2d 934, 966 (2d Cir.1990).

In deciding a motion to transfer under Rule 21(b), a district court should consider the ten, non-exclusive factors enumerated by the Supreme Court in *Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243–44, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964):

(a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of trial; (i) docket conditions of each potential district; and (j) any other special

circumstance that might bear on the desirability of transfer.

*Maldonado–Rivera,* 922 F.2d at 966 (citing *United States v. Keuylian,* 602 F.2d 1033, 1038 (2d Cir.1979)). A court "should not give any one factor preeminent weight nor should it assume that the quantity of factors favoring one party outweighs the quality of factors in opposition." *United States v. Spy Factory, Inc.,* 951 F.Supp. 450, 455 (S.D.N.Y.1997). As a general rule, " 'a criminal prosecution should be retained in the original district' in which it was filed, and defendants bear the burden of justifying a transfer." *United States v. Rubin/Chambers,* No. 09 CR 1058(VM), 2011 WL 102695, at *1 (S.D.N.Y. Jan. 3, 2011) (citing *Spy Factory,* 951 F.Supp. at 464).

## IV. Discussion

### A. Consideration of the First Nine Platt Factors

The crux of the Defendants' argument rests on the first, second, third, and sixth *Platt* factors. The Defendants both reside in California with their families—Riley with his wife and son in San Jose, California, in the Northern District (Riley Mot. at 6), and Teeple with his wife and three young children in Southern California, in the Central District. (Teeple Mot. at 2.) The Defendants point out that "virtually all of the anticipated witnesses reside in and around the Northern District of California," citing a *Brady* letter from the Government that lists sixteen potential witnesses located in California, two potential witnesses located in Texas, and one potential witness located in Colorado. (Riley Mot. at 3–4; Letter from Steve Lee and Jillian Berman, Assistant U.S. Attorneys ("Brady Letter"), Aug. 9, 2013, Ex. A to Riley Mot.) In addition to these witnesses, Riley asserts that the Defendants will likely call other fact witnesses and character witnesses, located in Northern California and Southern California.

(Riley Mot. at 5.) Riley asserts that the anticipated witness could include as many as thirty to forty people or more, and that all of the potential witnesses are located far from the Southern District of New York.[2] (*Id.*) Further, as the Defendants argued in their motion to dismiss for lack of venue, "[a]ll of the acts and conduct in question occurred in California, but for the ministerial act of the execution of the trades by a broker in Manhattan." (Riley Reply at 2; *see also* Teeple Reply at 8.)

The Defendants also rely on the sixth *Platt* factor: expenses to be incurred by the parties if transfer is denied. *See Platt,* 376 U.S. at 244, 84 S.Ct. 769. Riley asserts that he will be unduly burdened by the costs of a trial in New York, stating that he is "a man of quite modest means," with "net assets of approximately $500,000, not all liquid." (Riley Reply at 3.) Riley states that he is currently on unpaid administrative leave from his employment and his wife does not work outside the home, leaving him without current income. Accordingly, he asserts that "finding a place to live and subsist during the trial preparation and trial ... [n]ot to mention the costs of transportation and providing lodging to witnesses to be brought to New York from California" will cause him to suffer "real economic hardship" if a trial occurs in this District. (*Id.*) Teeple also claims that "relocating to New York City, away from his work, during the trial and in the weeks leading up to trial for preparation" will present a financial burden. (Teeple Mot. at 2.) He also asserts that trial in this District would "needlessly take Mr. Teeple away from the support and assistance of his parents, wife, and three young children," and that his wife, a pediatrician with an active practice in California, will be unable to temporarily move to New York City. (*Id.* at 2–3.)

**2.** In its memorandum in opposition to the Defendants' motion, the Government points out that it will call other witnesses located in New York in its case-in-chief, including at least one individual from the Manhattan-based prime broker used by Investment Adviser A, Goldman Sachs, witnesses from exchanges located in Manhattan where certain options contracts were traded, and at least two law-enforcement witnesses from the Federal Bureau of Investigation based in New York. (Gov't Opp'n at 5.) In response, Riley suggests that a stipulation may eliminate the need for testimony regarding the trading activity in New York (*see* Riley Reply at 2), and that, in any event, most of the witnesses to be called by both sides either reside in districts in California or are far from the Southern District of New York.

Absent other countervailing considerations, the fact that both Defendants reside in districts in California weighs in favor of the transfer of venue. *See United States v. Aronoff*, 463 F.Supp. 454, 457 (S.D.N.Y.1978) ("As ... judges have recognized, it can be a hardship for a defendant to face trial far away from home ... It has been stated, therefore, that as a matter of policy, a defendant should ordinarily be tried, whenever possible, where he resides."). Similarly, the fact that the majority of the anticipated witnesses are located in districts in California or outside of the Southern District of New York favors transfer.

However, neither of these two factors is dispositive or has independent significance in determining whether transfer is warranted. *See Platt*, 376 U.S. at 245–46, 84 S.Ct. 769 ("[T]he main office or 'home' of the respondent has no independent significance in determining whether transfer to that district would be 'in the interest of justice,' although it may be considered with reference to such factors as the convenience of records, officers, personnel, and counsel."); *Maldonado-Rivera*, 922 F.2d at 965 (noting "residence of defendants has no independent significance" in transfer motion and denying motion). With respect to the location of witnesses, the Defendants have not demonstrated that they are "financially incapable of paying the expenses of [their] witnesses," which weighs against transfer. *See Spy Factory*, 951 F.Supp. at 456 ("Courts in other circuits have held that '[g]enerally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer.... Defendants must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial.") (quoting *United States v. Haley*, 504 F.Supp. 1124, 1126 (E.D.Pa.1981)) (internal citations omitted). Thus, the Defendants' arguments regarding the first two *Platt* factors are not, on their own, sufficient to compel a transfer to the Northern District of California.

Similarly, consideration of the third *Platt* factor—the location of the events in issue—does not warrant transfer. The Defendants are correct that many of the acts alleged in the Indictment occurred in California. (*See*

Riley Reply at 2.) However, the Indictment also alleges that the Defendants caused acts to occur in the Southern District of New York—namely Investment Adviser A's use of a Manhattan-based prime broker firm to execute securities transactions on Manhattan-based securities exchanges. (*See* Gov't Opp'n at 6.) As this Court held in its Opinion and Order on January 7, 2014, the allegations in the Indictment suggest that it was foreseeable to Riley, based on his experience in securities trading, and Teeple, based on his familiarity with Investment Adviser A's trading activities, that securities transactions would be executed in New York as a result of the alleged dissemination of MNPI. (*See* Op. & Order at 6–8.) These allegations support venue in this district. *See United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir.2003) (analyzing venue based on substantial contacts test and finding venue proper where defendant "either knew, or could reasonably foresee, that his trades would be executed in the Southern District of New York").

Further, the Government argues that the criminal activity alleged in this case is "national in scope," such that New York and California are equally appropriate venues. (*See* Gov't Opp'n at 7.) A similar argument against transfer was accepted by the court in *Spy Factory*, where, although the defendants acted and resided in Texas, the court found that, "[b]ecause the criminal activity that was alleged to have occurred ... was concededly national in scope, the location of the events at issue favors neither side." 951 F.Supp. at 457 (Rule 21 motion denied in spite of Defendants' contention that the "majority of the acts and conduct in furtherance of the alleged conspiracy occurred at corporate headquarters in San Antonio, Texas"); *see also United States v. Wilson*, No. 01 CR 53(DLC), 2001 WL 798018, at *2 (S.D.N.Y. July 13, 2001) ("While significant criminal activities are alleged to have occurred in San Francisco, this was not a crime whose planning, execution, or impact was limited by geography."). The Court agrees with the Government's contention that insider trading, like the conspiracy to smuggle and sell wiretapping devices in *Spy Factory* and the accounting fraud scheme in *Wilson*, has a "national" impact and scope, and accordingly, the loca-

tion of the events in issue weighs only slightly in favor of transfer. *See Spy Factory*, 951 F.Supp. at 457.

As to the other specific factors identified in *Platt,* many are essentially neutral in this case. The parties agree that the relevant documents and records in this case are being stored in electronic databases and are equally accessible in any district. (*See* Gov't Opp'n at 7–8; Riley Mot. at 6 n. 2.) The Defendants do not cite to any potential disruptions to their business dealings, other than a potential disruption to the business of Teeple's wife. (Riley Reply at 3; Teeple Mot. at 2.) Both Defendants retained counsel in New York in April of 2013 (*see* Notices of Att'y Appearance, ECF Nos. 5, 6, 9) and assert that "the location of counsel is largely irrelevant to Defendants' transfer request." (Teeple Reply at 9; *see also* Riley Reply at 3.) Neither party points to concerns about the relative accessibility or the docket conditions of either district.[3]

Both the Government and the Defendants argue that the sixth *Platt* factor—expenses to the parties—weighs in favor of their position. As discussed above, the Defendants argue that they will be burdened financially by the costs of moving to New York temporarily for their trial and for trial preparation, as well as by the cost of transporting and providing lodging to their witnesses. (Riley Mot. at 6–7; Teeple Mot. at 2–3.) However, as the Government argues in its memorandum in opposition to the transfer motion, the sixth *Platt* factor is "generally afforded serious weight only in cases involving indigent defendants." (Gov't Opp'n at 8.) *See Spy*

*Factory,* 951 F.Supp. at 459 (finding that the factor of expenses does not weigh in favor of defendants where defendants "have not demonstrated that they are financially incapable of funding their defense")[4]; *Haley,* 504 F.Supp. at 1128–29 (defendant's indigence was a key factor in granting transfer of venue). While the Court is not insensitive to the "additional cost and potential for disruption of defendants' lives caused by commuting to and residing in New York for trial," it also recognizes that defending a criminal case "would be expensive in any forum" and that "[e]very life is significantly disrupted during a trial wherever it is held." *United States v. Stein,* 429 F.Supp.2d 633, 645 (S.D.N.Y.2006) (quoting *Wilson,* 2001 WL 798018, at \*3). The Court also recognizes that the expenses that would be imposed on the Government, should the case be transferred to California, are not insignificant. (*See* Gov't Opp'n at 9 ("A trial in California would require the Government to relocate to California at least one Assistant United States Attorney, a paralegal, and numerous Special Agents from the Federal Bureau of Investigation who investigated this case out of the New York area.").) Because the Government is in a better position than the Defendants to bear such expenses, the Court still finds that the sixth *Platt* factor weighs slightly in favor of Defendants, but not dispositively.

## B. Special Circumstances

Under the *Platt* analysis, an additional circumstance that bears on the desirability of transfer in this case is the timing of the Defendants' motion. According to the Fed-

---

**3.** While neither party points to concerns about the docket conditions in the Northern District of California, the Defendants have not provided any information to show that docket conditions are similar and concede that "a trial in California may not be able to start on April 14, 2014," the trial date that has been set in the Southern District of New York. (Riley Reply at 3.)

**4.** In *Spy Factory*, the district court found that the "expense to the parties" factor did not weigh in favor of transfer for two defendants—Kimball and Spy Factory, Inc.—because they had "not demonstrated that they [were] financially incapable of funding their defense." 951 F.Supp. at 459. However, for two other *Spy Factory* defendants, whom the court found had insufficient

assets to pay for legal representation, the Government offered to fund travel and lodging expenses for the defendants and their attorneys, and CJA funds covered the travel and lodging expenditures necessary to bring their witnesses to New York. *Id.* at 454 n. 2, 459. Accordingly, the court did not find that the factor of expenses weighed in favor of transfer for any of the defendants. *Id.* at 459. In this case, neither Defendant has demonstrated that he is financially incapable of funding his defense, nor has counsel for either Defendant argued that either Defendant should be eligible for CJA funding. Without a specific demonstration of financial hardship, the "expenses to the parties" factor does not weigh heavily in favor of transfer.

eral Rules of Criminal Procedure, a motion to transfer venue may be made at or before arraignment or at any time thereafter, as determined by the court or the rules. Fed. R.Crim.P. 21(d). The Defendants in this case were arrested in March of 2013 and arraigned in this Court on May 14, 2013. (*See* Criminal Docket for Case No. 13 CR 339.) At a conference held on August 14, 2013, the Court ordered that the Defendants' pretrial motions would be due on October 28, 2013. (Tr. of Proceedings on Aug. 13, 2013 ("8/13/13 Tr.") at 4, ECF No. 20.) The Defendants submitted ten pretrial motions on that date, including a motion to dismiss the Indictment for lack of venue (*see* Op. & Order), but did not submit a motion to transfer venue pursuant to Rule 21(b). At a lengthy oral argument, on December 4, 2013, the Court asked counsel for the Defendants if they were waiving their right to move for transfer pursuant to Rule 21. (*See* 12/4/13 Tr. at 20.) Counsel for Defendant Teeple responded:

> I can say we are not moving under Rule 21. The pretrial motions have now been filed, and we are not moving under Rule 21. But we are moving under the Constitution and Rule 12. And I think that that's a far more significant motion to say that we are being denied our constitutional right to be prosecuted in a venue where the crime is alleged to have been committed than to simply ask the Court under Rule 21 that for our convenience we'd prefer to be prosecuted in California rather than New York.

(*Id.* at 20–21.) Neither Defendant indicated any intent to move for transfer until December 10, 2013, nearly nine months after the commencement of the prosecution, when Riley filed a motion to transfer venue in the alternative, should the Defendants' motion to dismiss be denied. (*See* Riley Mot.) Teeple joined Riley's motion on December 11, 2013. (Teeple Mot.) Neither Defendant has offered a valid reason for his delay in moving to transfer the case, beyond suggesting that the

Defendants' Rule 21 motion was submitted, in part, in response to the Court's inquiry during oral argument.[5] (Riley Reply at 4; Teeple Reply at 2–3.)

While the Federal Rules of Criminal Procedure do not prohibit a court from considering a motion to transfer venue after pretrial motions have been filed, "[o]ne of the factors [in change of venue cases] to which the Second Circuit has paid special attention is a defendant's delay in moving to transfer the case." *Spy Factory,* 951 F.Supp. at 461 (internal citations omitted); *see Keuylian,* 602 F.2d at 1038 (upholding district court's denial of motion to transfer venue where "[t]he most important factor" for trial court "was appellant's delay in moving to transfer the case"); *Maldonado–Rivera,* 922 F.2d at 966 (upholding district court's denial of motion to transfer where district court "noted that the transfer motion was belated, having been made some nine months after commencement of the prosecution, after discovery was nearly complete, after substantive motions had been filed, and on the eve of the court's setting a date for trial"). As the Government argues, many judges in this district have found that a defendant's delay in making a Rule 21 motion counsels against transfer, especially when the trial court considering the motion is already familiar with the case. *See United States v. Borker,* No. 10 CR 1266(RJS), 2011 WL 1630344, at *2 (S.D.N.Y. April 28, 2011) (denying transfer motion where "the Court has already devoted a fair amount of time to this case and set a trial date"); *Rubin/Chambers,* 2011 WL 102695, at *2 ("Transferring the case at this juncture to another court in another judicial district would no doubt scuttle much of [the court's] progress and cause the trial to be postponed many months . . ."); *United States v. Carey,* 152 F.Supp.2d 415, 423 (S.D.N.Y.2001) ("Since no discovery was necessary to discern the venue issue, and in fact, all the information necessary to raise his venue concerns was present on the face of the indictment, Carey should have informed

---

5. Teeple additionally argues that "seeking transfer prior to dismissal is counterintuitive and not required by the rules." (Teeple Reply at 2.) However, this Court set a deadline for pretrial motions to be submitted by October 28, 2013,

and no rule would have prevented the Defendants from submitting a motion to transfer the case on that date, as an alternative should their motion to dismiss be denied.

the court of his intent to file the motion earlier. Granting the motion to transfer at this late stage would cause unnecessary delay and inconvenience.").

In this case, the Defendants' delay in filing their Rule 21 motion weighs heavily against transfer. The Defendants had ample opportunity to move to transfer the case prior to the date when pretrial motions were due, yet they chose not to do so. Neither Defendant has offered a "sufficiently compelling" justification for their failure to request transfer in a timely manner. *Rubin/Chambers*, 2011 WL 102695, at *2. At this point, transferring the case to another judicial district would likely result in significant delays, as this Court has already become familiar with the case and has set a trial date of April 14, 2014.

## V. Conclusion

■ For the reasons stated above, the Defendants have not met their burden to prove a need for transfer. None of the *Platt* factors cited by the Defendants weigh heavily in favor of transfer, and the Defendants' delay in filing their Rule 21 motion weighs against transfer of their case. The Defendants' motion to transfer venue is therefore denied.

IT IS SO ORDERED.